UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NATASHA SEVERIN and GALINA
COTOVA, individually and on Behalf of
all others similarly situated,

                Plaintiffs,

   - against -

PROJECT OHR, INC., METROPOLITAN
COUNCIL ON JEWISH POVERTY, and
D'VORAH KOHN,

                Defendants.
-------------------------------------------------------------X

No. 10 Civ. 9696(DLC)


### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFFS' MOTION FOR
### COLLECTIVE ACTION NOTICE AND PARTIAL SUMMARY JUDGMENT


MINTZ LEVIN COHN FERRIS GLOVSKY and POPEO, P.C.
666 Third Avenue
New York, New York 10017
(212) 935-3000

<u>**TABLE OF CONTENTS**</u>

**TABLE OF AUTHORITIES** ................................................................................ ii

**PRELIMINARY STATEMENT** .......................................................................... 1

**FACTUAL BACKGROUND** ............................................................................... 2

   1.   The City Authorizes OHR to Provide Home Care Services to Clients........................ 2

   2.   Project OHR Creates an Individual Plan of Care for Each Client ............................... 3

   3.   Project OHR Ensures that Home Attendants Perform Minimal Cleaning.................... 4

   4.   The Home Attendants' Work Schedules Vary............................................................. 5

   5.   Plaintiffs Agree That the Amount of Cleaning Varied from Client to Client.............. 5

**ARGUMENT** ......................................................................................................... 5

   **I.**   **FLSA's Companion Exemption**....................................................................... 5

   **II.**   **The Court Should Not Authorize a Collective Action Notice** ................................. 7

       A.   Plaintiff Must Base Any Showing That They Are
Similarly Situated to Other Employees on Evidence........................................7

       B.   Plaintiffs Failed to Provide the Evidence Necessary to Demonstrate
That They Are Similarly Situated to Other Home Attendants.........................10

          1.   Performing Job Duties that are "Sufficiently Similar"
Does Not Make Companions "Similarly Situated"............................... 10

          2.   Plaintiffs Fail to Identify a Common Policy that May
Violate FLSA ........................................................................................ 15

          3.   Plaintiffs' Request to Authorize Notice to All Individuals
Working as Home Attendants in the Past Six Years
is Unreasonable .................................................................................... 17

   **III.**   **The Court Should Deny Summary Judgment Because a Material
Issue of Fact Exists Regarding Whether Plaintiffs Spent 20% or Less
of Their Weekly Working Hours Performing General Household Work** ........... 18

       A.   Plaintiffs Misconstrue the Burden of Proof on Summary Judgment ..............18

       B.   An Issue of Material Fact Exists Regarding Whether Plaintiffs
Were Performing Certain Types of General Household Work........................21

       C.   An Issue of Material Fact Exists Regarding Whether Plaintiffs
Performed General Household Work Less Than 20% of the Time ................22

   **CONCLUSION** ................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Amendola v. Bristol-Myers Squibb Co.,*
 558 F. Supp. 2d 459 (S.D.N.Y. 2008)............................................................................ 8, 10

*Anderson v. Mt. Clemens Pottery Co.,*
 328 U.S. 680 (1946)............................................................................................................ 23

*Avila v. Northport Carwash, Inc.,*
 774 F. Supp. 2d 450 (E.D.N.Y. 2011) .............................................................................. 17

*Bowler v. Deseret Village Assoc., Inc.,*
 922 P.2d 8 (Utah 1996)...................................................................................................... 19

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986)............................................................................................................ 18

*Chinese News Daily, Inc. v. Wang,*
 --- S.Ct. ----, 2011 WL 4529967 (U.S. Oct. 3, 2011) ...................................................... 15

*Colson v. Avnet, Inc.,*
 687 F. Supp. 2d 914 (D. Ariz. 2010) .................................................................................. 8

*Dunkley v. Foodmart Intern. II, Corp.,*
 09 Civ. 4064(DLC), 2011 WL 3273144 (S.D.N.Y. Aug. 1, 2011) .................................... 18

*Edwards v. City of New York,*
 08 Civ. 3134(DLC), 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011) ................................... 18

*Eng-Hatcher v. Sprint Nextel Corp.,*
 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ......................................... 9, 12

*Fowler v. Incor,*
 03 Civ. 321, 2009 WL 366342 (E.D. Okla. Feb. 12, 1999)................................................ 19

*Guan Ming Lin v. Benihana Nat'l Corp.,*
 755 F. Supp. 2d 504 (S.D.N.Y. 2010)............................................................................. 9, 11

*Guillen v. Marshalls of MA, Inc.,*
 750 F. Supp. 2d 469 (S.D.N.Y. 2010)............................................................................. 8, 16

*Gunawan v. Sake Sushi Restaurant,*
 09 Civ. 5018, 2011 WL 3841420 (E.D.N.Y. Aug. 26, 2011)............................................. 23

*Henderson v. Transp. Group, Ltd.,*
 09 Civ. 7328(DLC), 2010 WL 2629568 (S.D.N.Y. Jul. 1, 2010)......................................... 8

*Hoffman-La Roche, Inc. v. Sperling,*
   493 U.S. 165 (1989)................................................................................8, 15

*Klimchak v. Cardrona, Inc.,*
   09 Civ. 4311, 2011 WL 1120463 (E.D.N.Y. Mar. 24, 2011)..............................17

*Kuebel v. Black & Decker, Inc.,*
   643 F.3d 352 (2d Cir. 2010)...........................................................................24

*Levinson v. Primedia, Inc.,*
   02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)..............................9

*Linn v. Developmental Svs. Of Tulsa, Inc.,*
   891 F. Supp. 574 (N.D. Okla. 1995)...................................................................5

*MacGregor v. Farmers Ins. Exchange,*
   10 Civ. 3088, 2011 WL 2981466 (D.S.C. Jul. 22, 2011) ...................................14

*McCune v. Oregon Senior Svs. Div.,*
   894 F.2d 1107 (9th Cir. 1990) ............................................................................6

*Mendoza v. Casa De Cambio Delgado, Inc.,*
   07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)....................................9

*Meyers v. Hertz Corp.,*
   624 F.3d 537 (2d Cir. 2010)................................................................................8

*Morales v. Plantworks, Inc.,*
   05 Civ. 2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)..................................13

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
   111 F. Supp. 2d. 493 (D.N.J. 2000) .................................................................16

*Rodriguez v. Jones Boat Yard, Inc.,*
   09 Civ. 23195, 2010 WL 7325250 (S.D. Fla. Jul. 26, 2010)................................7

*Ruiz v. Serco, Inc.,*
   10 Civ. 00394 (W.D. Wisc., Aug. 5, 2011) ......................................................14

*Salyer v. Ohio Bureau of Workers' Comp.,*
   83 F.3d 784 (6th Cir. 1996) ................................................................................6

*Terwilliger v. Home of Hope, Inc.,*
   21 F. Supp. 2d 1294 (N.D. Okla. 1998)...........................................................19
   42 F. Supp. 2d 1231 (N.D. Okla. 1999)...........................................................19

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*
   08 Civ. 3678, 2009 WL 1086935 (E.D.N.Y. Apr. 22, 2009)................................6

*Vaicaitiene v. Partners In Care, Inc.,*
   04 Civ. 9125, 2005 WL 1593053 (S.D.N.Y. Jul. 6, 2005) ................................................. 16

*Vasquez v. Vitamin Shoppe Indus.,*
   10 Civ. 8820, 2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011) ................................................. 8

*Wal-Mart Stores Inc. v. Dukes,*
   --- U.S. ----, 131 S.Ct. 2541, 180 L.Ed.2d 374 (Jun. 20, 2011) ..................................... 14-15

## <u>Statutes, Regulations and Rules</u>

29 U.S.C. §213(a)(15) .......................................................................................................... 5, 6

29 U.S.C. §216(b) .................................................................................................................. 8

29 C.F.R. §552.6 .......................................................................................................... 6, 7, 22

Rule 23 of the Federal Rules of Civil Procedure .................................................................. 17

## <u>Miscellaneous</u>

DOL Opinion Letter, March 16, 1995
   1995 WL 1032475 (DOL WAGE-HOUR, Mar. 16, 1995) ......................................... 6, 7, 21

## PRELIMINARY STATEMENT

The obligation to demonstrate that similarly situated employees exist to justify the authorization of a collective action notice is not a mere formality. To the contrary, plaintiffs are obligated to prove this state of facts. Plaintiffs have utterly failed to meet this burden. Indeed, the two named plaintiffs in this action are not even similarly situated to *each other*.

Plaintiffs contend that Project OHR's job description alone justifies the authorization of a collective action notice. But Project OHR's job description for home attendants is not the subject of plaintiffs' complaint here; rather, plaintiffs claim that *they* spent too much time performing non-exempt general household work, which placed *them* outside of the Fair Labor Standards Act's "companion" exemption. On this issue, however, plaintiffs failed to offer *any* evidence to show that they are similarly situated to other home attendants. Plaintiffs have offered no evidence showing that even a single other Project OHR home attendant, let alone all 1,700 of them, *also* performed too much non-exempt work.

Plaintiffs must demonstrate that this case is appropriate to proceed on a representational basis – one whose adjudication would resolve common issues of fact and law. But the resolution of plaintiffs' claims, whether favorably or unfavorably, will not impact a single other home attendant, making the authorization of a collective action notice inappropriate in this case.

Plaintiffs' motion for summary judgment also lacks merit, as clear issues of material fact exist regarding whether plaintiffs performed certain general household work unrelated to the care of their clients, and whether they spent less than 20% of their weekly working hours performing non-client care to qualify them as exempt companions under the Fair Labor Standards Act.

## FACTUAL BACKGROUND

1.      The City Authorizes OHR to Provide Home Care Services to Clients

The New York City Department of Social Services/Human Resources Administration (the "HRA") maintains a program that provides Medicaid-eligible individuals with "home attendant" services (Defendants' Rule 56.1 Responses to Plaintiffs' Rule 56.1 Statement and Additional Material Facts, Response to Purported Statement of Undisputed Fact No. 6).[1]   HRA contracts with home care agencies like Project OHR to provide these services to eligible individuals (RF¶6).

The process begins when Project OHR receives a "service authorization" from HRA. The "service authorization" is a highly personalized document, authorizing care that is specific to the individual's needs (*id.*).   Accordingly, the number of hours of home care HRA authorizes for an individual varies greatly from a few hours per week to around-the-clock weekly care (*id.*). The service authorization also details the level of care the individual needs to ensure that he or she is, among other things, properly (1) fed, (2) ambulated, (3) bathed, (4) toileted, (5) groomed, (6) dressed, and (7) medicated (*id.*).

The service authorization may also authorize the home attendant to perform certain "Chores" services for the individual, which includes, among other things, "cleaning" services to maintain "a clean and orderly appearance of the primary client's home" but *only if* (1) "no family member or other persons are available, (2) it is "necessary for the client's health and comfort", and (3) it does not include "any household functions for non-clients in the household" (*id.*).   The service authorization may also include a "Client Task Sheet – MRT Plan of Care" ("Task Sheet"), which caps the amount of time a home attendant may devote to Chore services at no

---

[1]   For the convenience of the Court, defendants cite to their Rule 56.1 Statement throughout this Memorandum, and, more specifically, defendants cite to their specific responses to plaintiffs' Rule 56.1 statement of material facts as "RF", and to their additional material facts as "AF".

more than seven hours each week (*id.*).

      2.     Project OHR Creates an Individual Plan of Care for Each Client

After receiving the Service Authorization from HRA, Project OHR sends a registered nurse to the individual's residence to further assess their needs (*id.*). The nurse then prepares an initial Nurse's Assessment Visit Report documenting the individual's specific needs (*id.*). Project OHR creates additional Nurse's Assessment Visit Reports at least once every six months or at more frequent intervals to account for changes in a client's condition (RF¶¶20, 21). Those additional Reports, like the HRA Task Sheet, cap the number of "housekeeping activities" at seven hours per week (RF¶6).

Using those reports and the Task Sheet as guides, nurses create individual "Client Care Plans" (*id.*). In the plan of care, a copy of which is placed in the client's home, the nurse (i) describes the client's condition and any significant health issues, and (ii) details the level of care the home attendant must provide, including household chores (*id.*). No two client plans of care are exactly the same because no two clients are the same, and the level of care in the plan will depend on many factors, including (i) the client's condition and needs, (ii) the number of authorized hours, (iii) the size and condition of the residence, and (iv) whether the client lives with anyone else (RF¶20; AF¶14). City regulations also require Project OHR nurses to update the plans of care at least once every six months or at more frequent intervals to account for changes in a client's condition (RF¶¶20, 21). Project OHR may recommend that HRA authorize additional hours of care if the client's condition declines (RF¶¶26, 27).

Project OHR requires home attendants to review the plan of care and discuss any concerns about its contents with the nurse (RF¶6). Thereafter, home attendants are required to provide care in accordance with the plan of care (RF¶¶16, 20).

3.      Project OHR Ensures that Home Attendants Perform Minimal Cleaning

Project OHR takes certain steps to minimize the types and amounts of cleaning home attendants perform that is not directly related to the care of the client.

First, Project OHR informs its clients in writing that home attendants are "not required nor permitted to perform heavy duty cleaning tasks such as (a) washing windows or blinds, (b) moving furniture, and (c) waxing floors" (RF¶6), and that "HRA has defined limits on the number of hours a home attendant may dedicate to housekeeping chores" (RF¶16).  Project OHR reinforces these restrictions with clients and their families at in person meetings or by telephone (RF¶¶16, 18).

Second, Project OHR provides its home attendants with its Policies and Procedures Manual, which instructs them that "[e]xcessive cleaning, performing duties for non-authorized client family members, or other tasks not listed in this booklet or on the Plan of Care, are inappropriate and should be reported immediately to the home attendant's assigned Personnel Specialist" (RF¶6).

Third, HRA and Project OHR require home attendants to attend mandatory training sessions where union representatives and Project OHR personnel train them regarding their duties, including following plan of cares, and regarding the prohibition against heavy cleaning (*id.*).  Project OHR reinforces these concepts informally throughout the year (RF¶¶6, 12).

Fourth, personnel specialists periodically make unannounced phone calls or visits to the client's home, and nurses visit the client's home every ninety days to monitor home attendant performance, including discussing any issues or concerns (RF¶¶6, 18).

Fifth, Project OHR requires attendants to enter task codes, including one for cleaning, daily into a database that produces Individual Client Activity Reports (RF¶¶6, 16).

4.      The Home Attendants' Work Schedules Vary

The amount of care home attendants provide varies from week to week (AF¶4).  Home attendants work hourly shifts, split-shifts and sleep-in shifts, or some combination of these shifts in any given workweek (AF¶4).  Sometimes, home attendants provide care for more than one client on the same shift, and sometimes they work multiple single client shifts during the week (AF¶¶5-6).  Home attendants also act as temporary replacements for other home attendants' clients on an as needed basis (AF¶7).  Over the course of their employment, plaintiffs provided home care to more than 100 clients (AF¶¶9, 11).

5.      Plaintiffs Agree That the Amount of Cleaning Varied from Client to Client

Plaintiffs testified at length regarding their job duties, including the types of cleaning they performed (AF¶¶12-32).  They admitted that the types of care they provided, including cleaning, and the time it took to provide that care, varied from client to client (*id*.).

## ARGUMENT

### I.      FLSA's Companion Exemption

The Fair Labor Standards Act ("FLSA") exempts "companions" from its minimum wage and overtime requirements.  29 U.S.C. §213(a)(15).  Companions are individuals "employed in domestic service employment who provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  *Id*.  Congress created this exemption to make private home care affordable.  *Linn v. Developmental Svs. Of Tulsa, Inc.*, 891 F. Supp. 574, 577 (N.D. Okla. 1995).

The Department of Labor (DOL) regulation interpreting FLSA's companionship exemption define "companionship services" to mean:

those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.  They may also include the performance of general household work: *Provided, however*, [t]hat such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.  29 C.F.R. §552.6.

A plain reading of this controlling regulation (to which due deference must be accorded, *see, e.g.,  Salyer v. Ohio Bureau of Workers' Comp.,* 83 F.3d 784, 787 (6th Cir. 1996)), makes it clear that a companion may provide an elderly or infirm individual with an expansive array of home care services, and is not limited to merely "watch[ing] an older person" on a "casual" basis, as plaintiffs suggest in their memorandum of law (Docket No. 33, pp. 15, n.7 & 16 (citing to Judge Pregerson's dissenting opinion in *McCune v. Oregon Senior Svs. Div.*, 894 F.2d 1107, 1112 (9th Cir. 1990)).

The regulation focuses on whether the services provide "fellowship, care and protection," for the individual (language omitted in plaintiffs' memorandum of law (p. 15)), and these services explicitly include "*household work related to the care* of the aged or infirm person such as meal preparation, bed making, washing of clothes, and *other similar services*."  29 C.F.R. §552.6 (emphasis added).  The DOL's Wage and Hour Division has issued an opinion letter, which addresses the meaning of "other similar services."  Specifically, the Division stated that:

> such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purpose of section 13(a)(15) of the FLSA.  However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation.

1995 WL 1032475 (DOL WAGE-HOUR, Mar. 16, 1995) ("Opinion Letter").   In *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.* (cited by plaintiffs at p. 17 of their Memorandum), the Eastern District of New York recognized that the DOL's Opinion Letter

"fill[ed] in the gap left in the . . . regulation," and found that the letter's interpretation of "other similar services" was reasonable.  08 Civ. 3678, 2009 WL 1086935, at *3-5 (E.D.N.Y. Apr. 22, 2009) (dismissing plaintiffs' complaint because they did not allege that they performed any heavy cleaning duties).  *See also Rodriguez v. Jones Boat Yard, Inc.*, 09 Civ. 23195, 2010 WL 7325250, at *5-6 (S.D. Fla. Jul. 26, 2010) (following the DOL's Opinion Letter and entering summary judgment for employer because "nearly all of plaintiffs work related to the personal care of [the client]").[2]

As long as the companion performs "heavy cleaning" or other "general household services" – that is, work not directly related to the care of the client – for less than 20% of the total weekly hours he or she works, the exemption is not lost.  29 C.F.R. §552.6; Opinion Letter, 1995 WL 1032475.

Plaintiffs claim that Project OHR misclassified them (and other home attendants) as exempt "companions" because they generally spend more than 20% of their weekly hours performing "heavy cleaning" or other "general household work" for their clients.  It is around this central issue that plaintiffs ask the Court to authorize a collective action notice to at least 1,700 Project OHR home attendants and enter summary judgment in their favor.  As discussed below, neither a collective action notice nor summary judgment is appropriate here.

## II.    The Court Should Not Authorize a Collective Action Notice

### A.    Plaintiff Must Base Any Showing That They Are Similarly Situated to Other Employees on Evidence

Section 216(b) of the Fair Labor Standards Act permits individuals to commence what is commonly referred to as a "collective action" on behalf of themselves and "in a representative

---

[2]    Plaintiffs rely on an interpretation of "general household work" that includes "general maintenance services, including cleaning laundry areas, general household cleaning (through use of mop, duster, and vacuum), washing vehicles, cleaning the garage, and maintaining the yards and grounds" (Pls. Mem., p. 17 (citing *Bowler v. Deseret Village Assoc., Inc.*, 922 P.2d 8, 14 (Utah 1996)).  To date, courts in this Circuit have not adopted this interpretation.

capacity for 'other employees similarly situated'" to remedy alleged FLSA violations.  29 U.S.C. §216(b); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (Cote, J.).  Other individuals can join a collective action by filing an "opt-in" form.  *Id.*

To effectuate Section 216(b)'s collective action mechanism, district courts are vested with the discretion to authorize a notice to potential plaintiffs.  *See Henderson v. Transp. Group, Ltd.*, 09 Civ. 7328(DLC), 2010 WL 2629568, at *3 (S.D.N.Y. Jul. 1, 2010).  This discretion, however, may only be exercised in "appropriate cases" – that is, where the court first makes "a preliminary determination that the employees who will [receive] the notice are similarly situated to the plaintiff."  *Id.* at *4; *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

It is plaintiffs' burden to show that they are "similarly situated" to other employees – that they and others "were the victim[s] of a common policy or plan that violated the law," or, stated differently, they must show "a factual nexus between [them] and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation."  *Henderson*, 2010 WL 2629568, at *4.  *See also Meyers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).

While the factual showing that they are similarly situated is a modest one, the "burden is not non-existent," and "must still be based on some substance."  *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).  *See also Vasquez v. Vitamin Shoppe Indus.*, 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. Jul. 11, 2011) (FLSA "certification is not automatic"); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) (although the burden is "light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute").

Reliance on pleadings alone is insufficient to satisfy this burden.  Plaintiffs must supplement these pleadings "by other evidence, such as affidavits from the named plaintiffs, opt-

8

in plaintiffs, or other putative collective action members." *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010).  "Conclusory allegations or lack of nexus" will "prevent the case from moving forward as a collective action." *Mendoza v. Casa De Cambio Delgado, Inc.*, 07 Civ. 2579, 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008) (refusing to authorize notice where the pleadings and affidavits offered conclusory allegations and demonstrated no factual nexus between plaintiffs and putative class members); *Vasquez*, 2011 WL 2693712, at *3 (same); *Guan Ming Lin*, 755 F. Supp. 2d at 510-11 (same).

To satisfy the nexus requirement, plaintiffs cannot merely rely on evidence that "*they were deprived of . . . minimum wage and overtime[;] [rather] they have [to show] that the same was true for other potential plaintiffs.*" *Levinson v. Primedia, Inc.*, 02 Civ. 2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (emphasis in original) (refusing to authorize notice where plaintiffs failed to make "a factual showing that extends beyond their own circumstances"); *Guan Ming Lin*, 755 F. Supp. 2d at 509 (plaintiffs failed to state in their own declarations that others were similarly situated); *Eng-Hatcher v. Sprint Nextel Corp.*, 07 Civ. 7350, 2009 WL 7311383, at *3 n.6 (S.D.N.Y. Nov. 13, 2009) (refusing to authorize notice, in part, because plaintiff presented only her own deposition testimony as alleged proof).

Further, courts should exercise greater caution before authorizing a collective action notice "on the basis of . . . thin factual support" where a larger number of possible plaintiffs exists. *See Guillen*, 750 F. Supp. 2d 469 (citations omitted).  *See also Eng-Hatcher*, 2009 WL 7311383, at *5 ("the minimal evidence fails to justify the size and scope of Plaintiff's requested [collective action notice] to more than 1,200 potential plaintiffs).

As this Court has stated, "[w]here the plaintiffs fail to carry [their] burden or where a defendant employer shows either that the potential recipients of the notice are not similarly

situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice."  *Amendola*, 558 F. Supp. 2d at 467.  As explained below, plaintiffs have failed to make the modest factual showing that they are similarly situated to other home attendants.

> B.      Plaintiffs Failed to Provide the Evidence Necessary to
> <u>Demonstrate That They Are Similarly Situated to Other Home Attendants</u>

Plaintiffs argue that they are "similarly situated" to other home attendants because they (1) perform job duties that are "sufficiently similar," and (2) were subject to the same Project OHR "policy" that failed to pay them minimum and overtime wages" (Pls. Mem., p. 4, 6, 10). Neither provides a legal basis upon which to issue a notice.

> 1.      Performing Job Duties that are "Sufficiently Similar"
> <u>Does Not Make Companions "Similarly Situated"</u>

Plaintiffs argue that they are similarly situated because they and other home attendants are subject to the same general job description.  Specifically, they argue that (i) the same personnel policies, which describe "uniform job expectations," apply to all home attendants; and (ii) the individual client "Plans of Care" and "Nurse's Assessment Visit Reports" all "contain the same basic job duties varying from client to client only in terms of the amount of time anticipated to be spent on each task" (Pls. Mem., pp. 10-11).  Plaintiffs miss the point for two reasons.

First, plaintiffs do not allege that Project OHR's "uniform job expectations" for home attendants, on its face, demonstrates an exemption misclassification in violation of FLSA.  If they had (which they cannot), reliance on a common "job description itself" would be sufficient "to demonstrate the scope and similarity of [the proposed plaintiffs'] daily activities," where "the company's job description includes both [exempt] and [non-exempt] duties. *Guillen*, 750 F.

Supp. 2d at 476.   Rather, plaintiffs are alleging that, despite these lawful "uniform job expectations," *they* spent too much time performing work outside the scope of those expectations – namely, that *they* had to perform "heavy cleaning" and other general household work unrelated to the care of the client in excess of 20% of their working hours each week.   In this case, "it is not enough to show that [plaintiffs] and the proposed class of [home attendants] operated under the same job description.   Instead, [plaintiffs] must show that [they and other home attendants] were similarly situated with respect to the claim that they were required to perform [these non-exempt] job duties in contravention of the formal job description" and that they "spent [too much] time performing [those non-exempt job duties]." *Id*.

The plaintiff made the exact same mistake in *Guillen*.   There, a Marshall's Assistant Store Manager alleged that Marshalls misclassified him and other Assistant Store Managers (ASMs) as FLSA exempt because they actually spent a majority of their time performing non-exempt duties outside the scope of their job descriptions.   In refusing to authorize notice, the court focused not on the fact that the ASMs may have performed the same job duties, but on whether plaintiff was "similarly situated to the proposed plaintiffs with respect to his allegation that he spent most of his time performing non-managerial tasks" in "contravention of the ASM job description."   *See id.* at 476-77 (noting that a different result would mean that where a company employs a standard job description, "any single employee may plausibly assert that employees . . . are similarly situated with respect to that employee's day-to-day job activities even if those job activities contravene the company's stated requirements").[3]   *See also Guan Ming Lin*, 755 F. Supp. 2d at 512 (allegations that restaurant's expense reimbursement policy

---

[3]   The *Guillen* court also noted that it was refusing to authorize notice not because a fact-specific and detailed analysis of each ASMs actual job duties would actually have to be performed, but rather because, "the problem here . . . is that there is virtually no basis to conclude that ASMs . . . are similarly situated to [plaintiff] with respect to his allegation that he spent the majority of his time performing non-managerial tasks." *Id.* at 479.

applied to all deliverymen was insufficient to authorize notice, because plaintiffs did not show that the impact of that policy would result in wage violations against all deliverymen).

Second, plaintiffs do not offer *any* proof that other home attendants may have performed heavy cleaning or other general household work outside the scope of their job descriptions, or that they may have spent more than 20% of their working hours doing so.[4]  Plaintiffs did not submit their own affidavits or a single affidavit from any other home attendant (including the two they identified in their discovery responses and the one that opted into this action) demonstrating that they are similarly situated to each other (AF¶34).[5]  *See Eng-Hatcher*, 2009 WL 7311383, at *3 n.6 (notice not authorized, in part, because it was "telling that after nearly four months of discovery, Plaintiff was unable to present any evidence, other than her own [deposition testimony]").

Plaintiffs instead rely only on the declaration of their attorney, which attaches the three documents they claim demonstrate that they are similarly situated to other home attendants: (i) the OHR personnel handbook, (ii) a sample plan of care; and (iii) a sample Nurse's Visit Assessment Report (Pls.' Mem., p. 10-11).  None of these documents demonstrate that Project OHR home attendants are similarly situated to each other.  In fact, they demonstrate the opposite.

The personnel handbook does not contain any information that supports plaintiffs' claim that they (and other home attendants) spent too much time performing general household work.  In fact, its relevant language supports defendants by clearly stating that "[e]xcessive cleaning, performing duties for non-authorized client family members, or other tasks not listed in this booklet or on the Plan of Care, are inappropriate and should be reported immediately to the home

---

[4]   Plaintiffs' burden, which relates solely to whether the Court should authorize notice, is distinguished from Project OHR's burden to prove that plaintiffs spent less than 20% of their time on general household work.

[5]   In fact, plaintiffs conceded at their depositions that they did not know these individuals (AF¶34).

attendant's assigned Personnel Specialist" (RF¶6).

The sample plan of care submitted by plaintiffs (or any other plan of care for that matter) does not indicate that home attendants would perform tasks outside of those listed in their general job description, or that plaintiffs or other home attendants performed general household work each week in excess of the statutory 20% limitation.  Even plaintiffs concede the plans of care demonstrate that the "time anticipated to be spent on each task" varies "from client to client" (Pls.' Mem., p. 11).

The sample Nurse's Assessment Visit Report further undercuts plaintiffs' claims.  That Report specifically limits the amount of "Housekeeping Duties" a home attendant may perform to seven hours each week for a client who needs total assistance (RF¶¶13, 16, 22).  Even if all "Housekeeping Duties" counted as "general household work" subject to the weekly 20% rule, the Report only permits the home attendant to spend a minimal amount on that work.

The plaintiffs rely on nothing else, except, possibly, their Second Amended Complaint, but that contains merely conclusory allegations that are insufficient to authorize a notice.  *See Morales v. Plantworks, Inc.*, 05 Civ. 2349, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) (refusing to authorize notice where plaintiffs relied on allegations in complaint and attorney affidavit attaching documents produced during discovery).  Further, plaintiffs are not even similarly situated to each other: only Severin claims to have performed certain types of household work and to have worked overtime (AF¶¶27, 29, 30-32, 35).

Plaintiffs' inability to show that they are similarly situated to each other and to other home attendants is unsurprising.  The time each home attendant spends performing "general household work" each week varies greatly based on: (1) the physical and mental condition of each client (which changes over time), (2) the needs of each client as identified on the plan of

care (which also changes over time); (3) the number of individuals living in the client's home, (4) the size and condition of the client's home, and (5) the type of shift and number of shifts the home attendant worked each week, including (i) the length of the shift, (ii) whether the home attendant was acting as a replacement, and (iii) whether the home attendant was caring for one or more clients during the shift (AF¶14).  All of this factual variability is further compounded by the fact that home attendants service multiple clients and are supervised by multiple nurses and personnel specialists.  Essentially, this litany of distinguishing factors demonstrates that even if *plaintiffs* worked more than 20% of the time performing "general household work" – and they did not – it does not mean that *any* other home attendant did so as well, making a collective action notice inappropriate.

It may be on this basis that courts are now finding the Supreme Court's recent decision in *Wal-Mart v. Dukes* "instructive" when making a preliminary notice decision.  *Wal-Mart* teaches that "[w]hat matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *See Ruiz v. Serco, Inc.*, 10 Civ. 00394 (W.D. Wisc., Aug. 5, 2011) (emphasis in original; internal citations omitted) (quoting *Wal-Mart Stores Inc. v. Dukes*, --- U.S. ----, 131 S.Ct. 2541, 180 L.Ed.2d 374 (Jun. 20, 2011) and refusing to authorize a collective action notice because the proof offered by plaintiffs showed wide variations in duties, experience, responsibility, discretion and supervisors, and would not generate answers to common to those who would receive notice) (Rubin Decl., Ex. 27); *MacGregor v. Farmers Ins. Exchange*, 10 Civ. 3088, 2011 WL 2981466, at *3 (D.S.C. Jul. 22, 2011) (finding *Wal-Mart* "illuminating" on a FLSA notice determination, because if individuals

take "decentralized and independent action . . . that is contrary to the company's established policies, individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action").  *See also Chinese News Daily, Inc. v. Wang*, --- S.Ct. ----, 2011 WL 4529967 (U.S. Oct. 3, 2011) (vacating judgment and remanding wage and hour hybrid collective-class action to Ninth Circuit "for further consideration in light of *Wal-Mart*").

If this case advances as a collective action, it will not generate an answer common to all potential plaintiffs.  Inevitably, each home attendant's work situation would have to be extensively analyzed to determine whether they performed certain general household work outside of their job description for *each* client and for how long they performed that work for *each* week (for up to three years).  Given the number of weeks and clients involved, this may result in well over a million individual exemption analyses just for the 1,728 *current* home attendants, which runs contrary to the very purpose of a collective action, which is to economize and simplify individual actions where there are "*common issues of law and fact arising from the same . . . alleged activity.*"  *Hoffman-La Roche*, 493 U.S. at 170 (emphasis added).  Accordingly, defendants respectfully submit that the nature of this dispute, analyzed in the context of the companion exemption's 20% rule, renders a collective action inherently and completely unworkable in this case.

2.   Plaintiffs Fail to Identify a Common Policy that May Violate FLSA

Plaintiffs also claim that Project OHR's decision to classify all home attendants as exempt companions constitutes a common policy or plan that violates the law (Pls. Mem., p. 10).  But an employer's decision to classify its employees as exempt is not, by itself, a "common policy or plan that violates the law" sufficient to satisfy the similarly situated standard.  *See Vasquez*, 2011 WL 2693712, at *4 ("the mere classification of a group of employees – even a

large . . . group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan or practice that renders all putative class members as 'similarly situated'") (citations omitted).

As the *Guillen* court recognized in refusing to authorize notice, this would mean that "carried to its logical conclusion . . . any employee of a corporation who asserts that he performs non-exempt work necessarily meets the threshold showing that his suit should proceed as a collective action with the class of plaintiffs being all employees . . . with the same job title."  750 F. Supp. 2d at 478 n.3.  Plaintiffs essentially do just that – alleging a common policy that is nothing more than Project OHR's "determination that they are exempt under the FLSA."  *See Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 498 (D.N.J. 2000).  *See also MacGregor*, 2011 WL 2981466, at *3 (alleged failure to pay overtime is not a "common policy or plan that violates the law" but rather a "result").

Plaintiffs' citation to *Vaicaitiene v. Partners In Care, Inc.*, 04 Civ. 9125, 2005 WL 1593053 (S.D.N.Y. Jul. 6, 2005) (Pls. Mem., pp. 10) is inapposite.  The home health aides there, even though uniformly classified as exempt companions, were subject to Partners in Care's uniform written overtime policy, which actually *entitled* them to overtime pay, just at a rate lower than FLSA required.  *Id.* at *4-5.  The issue was whether the home health aides were "employed" by an agency other than the family or household using their services.  *Id.*  If the Court resolved that "employer" issue in plaintiffs' favor, it would mean that Partners in Care had misclassified each and every home health aide and its overtime policy would then, on its face, violate FLSA.  While this was also a companion misclassification case, the "common policy" was the written overtime policy, and not the decision to classify them as exempt.

By not identifying any common policy or practice that may violate FLSA or offering any

evidence of a factual nexus to other home attendants, plaintiffs cannot demonstrate that they are similarly situated to other home attendants and a collective action notice is inappropriate.

      3.      Plaintiffs' Request to Authorize Notice to All Individuals
                Working as Home Attendants in the Past Six Years is Unreasonable

Even if plaintiffs somehow satisfy the "similarly situated" test, the Court should limit the scope of their requested notice to three years (the maximum FLSA statute of limitations period) instead of the six year period the plaintiffs request (the NYLL statute of limitations period).

Plaintiffs, by their own choosing, did not seek to certify a Rule 23 state law class action after conducting more than four months of extensive discovery (presumably because of the difficulty they face in satisfying its stringent requirements).  Defendants take exception to plaintiffs' strategy of deferring the Rule 23 certification analysis, while still requesting a class notice covering home attendants for the past six years.  Respectfully, the Court should not endorse this end run around Rule 23 to secure a more expansive FLSA class.

Contrary to plaintiffs' claim (Pls.' Mem., p. 11, n. 5), courts do not "routinely authorize" this type of collective action notice when plaintiffs have deferred seeking Rule 23 certification. And when they do, such notice is authorized only when "the number of potential plaintiffs is not large."  *See Klimchak v. Cardrona, Inc.*, 09 Civ. 4311, 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011) (only about 50 individual would receive notice); *Avila v. Northport Carwash, Inc.*, 774 F. Supp. 2d 450, 455-56 (E.D.N.Y. 2011) (only about 25 individuals would receive notice and citing cases stating the same) (both cited by plaintiff at p. 11, n.5 of their Memorandum).  Here the potential plaintiffs number in the thousands, making a six-year notice inappropriate.

**III.    The Court Should Deny Summary Judgment Because a Material Issue
of Fact Exists Regarding Whether Plaintiffs Spent 20% or Less
of Their Weekly Working Hours Performing General Household Work**

A court should not grant summary judgment if "all of the submissions taken together 'show that there is [a] genuine issue as to any material fact.'"  *Dunkley v. Foodmart Intern. II, Corp.*, 09 Civ. 4064(DLC), 2011 WL 3273144, at *2 (S.D.N.Y. Aug. 1, 2011) (denying plaintiff's motion for partial summary judgment on a FLSA overtime claim).  As long as a reasonable juror can find for the non-moving party based on the evidence presented, summary judgment is inappropriate.  *Edwards v. City of New York*, 08 Civ. 3134(DLC), 2011 WL 3837130, at *4 (S.D.N.Y. Aug. 29, 2011) (disputes over material facts exist when those facts will affect the outcome of the lawsuit).  All evidence must be viewed in a light most favorable to the non-moving party.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Defendants' Fifth Affirmative Defense asserts that plaintiffs qualify under FLSA's "companionship" exemption and are therefore not subject to FLSA's overtime requirements. Plaintiffs contend in their partial motion for summary judgment that the exemption does not apply because they satisfy the 20% rule – an exception to the companionship exemption.[6]  Here, viewing all the evidence in a light most favorable to defendants, a genuine issue as to a material fact exists – that is, whether plaintiffs spent less than 20% of their workweek performing general household work unrelated to the care of their clients.

A.    Plaintiffs Misconstrue the Burden of Proof on Summary Judgment

Plaintiffs spend a great deal of time addressing the burden to prove the application of the companion exemption, including the 20% requirement – characterizing it as "daunting."  Yet, tellingly, plaintiffs could only cite to cases where courts (i) denied the *employer's* motion for

---

[6]    Although both plaintiffs seek summary judgment on this overtime affirmative defense, Cotova did not assert overtime claims (FA¶35), and her FLSA claims are otherwise time-barred (Docket No. 27).

summary judgment on the companion exemption, or (ii) found for plaintiffs on the companion exemption *after* a bench trial (*see* Pls.' Memo of Law, pp. 16-20 (citing *Fowler v. Incor*, 03 Civ. 321, 2009 WL 366342 (E.D. Okla. Feb. 12, 1999) (addressing 20% issue in its findings of fact and conclusions of law); *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1294 (N.D. Okla. 1998) (denying employer's summary judgment motion because issue of fact on 20% issue); *Bowler v. Deseret Village Assoc., Inc.*, 922 P.2d 8 (Utah 1996) (denying employer's summary judgment motion because issue of fact existed on 20% issue)).

In *Terwilliger*, one of the cases relied on by plaintiffs, the Northern District of Oklahoma denied the employer's motion for summary judgment stating that the employer had not submitted evidence "which establishes that its employees did not spend more than twenty percent of their total weekly hours performing general household work."  21 F. Supp. 2d at 1302.  Given the nature of the job at issue there – plaintiff was alone and unsupervised in group homes with disabled clients – the *Terwilliger* court opted instead to appoint a Special Master, who, along with the Court, toured a sampling of the group homes, conducted additional evidentiary hearings, and then tried the "20% issue."  *See Terwilliger v. Home of Hope, Inc.*, 42 F. Supp. 2d 1231, 1234 (N.D. Okla. 1999).  In its findings of fact and conclusions of law issued after trial, the Master found that the evidence did *not* support a finding that the plaintiffs' spent more than 20% of their workweek on general household work "given the sizes of the houses, the number of staff members assigned to each house, and the needs of the clients served."  *Id.* at 1251.

Specifically, although the parties did *not* maintain contemporaneous records establishing the amount of time spent by the employees on "general household work," the evidence showed (1) no complaints to the employer about excess general household work, although they were expected to complain; (2) the information provided on "Individual Habilitation Plans" – that

case's version of plans of care – supported the conclusion that employees spent less than 20% on general household work; (3) testimony from supervisors that plaintiffs could not have spent more than 20% of their time performing general household work; and (4) the general lack of credible testimony from the plaintiffs regarding general household work – i.e. "It is unreasonable to assume . . . that anyone would clean out the refrigerator or wash curtains and mini-blinds in these homes on a weekly basis, or that anyone would wash the windows and clean the mirrors on a daily basis in his or her own home." *Id.* at 1235-51.

Plaintiffs also rely heavily on *Fowler*.   There, after a bench trial, the district court determined that the employer did not satisfy its burden of proof on the 20% rule because the *only* evidence presented regarding the quantity of general household work was plaintiffs' own testimony.  Because the employer did not even meet its own minimal burden of production, the court declined to make any credibility determinations regarding plaintiffs' time estimates.  2009 WL 366342, at *15, n.9.

While defendants may have the ultimate burden to prove the exemption's application, it remains plaintiffs' burden at the summary judgment stage to show that no dispute over a material fact exists.  *See Dunkley*, 2011 WL 3273144, at *2.  Plaintiffs are essentially arguing that no such dispute exists because defendants did not present any evidence that they performed general household work less than 20% of the time (Pls.' Mem., p. 15).  As explained below, the overwhelming documentary and testimonial evidence compiled during discovery is more than sufficient to allow a jury to find that plaintiffs were not performing certain types of general household work unrelated to the care of their clients, and, even if they were, they certainly were performing general household work less than 20% of the time.

B.    An Issue of Material Fact Exists Regarding Whether Plaintiffs
Were Performing Certain Types of General Household Work

Aside from mathematical computations, a dispute of material fact exists over whether plaintiffs performed "general household work" that would count towards the 20% limitation.

Plaintiffs claim that they were "responsible for the entirety of household chores (Pls. Mem. p. 16), including cleaning the "bathroom," "kitchen" and "living/dining room" and doing "laundry/ironing" and taking out the trash (Pls. Stmt., ¶5).  Defendants dispute these contentions (RF¶¶6, 7, 9, 11, 15, 16, 20-22), but even if true, many of these tasks do not count towards the 20% rule.  For example, the washing of clothes (by hand or otherwise) does not count, nor would cleaning a client's bathroom or kitchen.  *See Torres*, 2009 WL 1086935, at *3-5; DOL Opinion Letter, 1995 WL 1032475.  And to the extent that these tasks are not automatically exempted from the 20% rule, plaintiffs do not identify whether this household work relates to the client (not subject to the 20% rule) or is "general household work" (subject to the 20% rule) or some combination of the two.

An analysis of the evidence demonstrates that nearly all of the cleaning tasks Severin and Cotova performed were related to the care of their clients.  For example, Severin testified that she would clean the bathroom before and after bathing a client to make it "comfortable and safe" because "it's exactly the place where elderly persons often slip and fall" (AF¶29).  Cotova testified that she cleaned bodily fluids off the bathroom floor, which was a "common occurrence," for certain patients, but would not clean the bathroom when the client used it successfully (AF¶30).

Similarly, both plaintiffs testified that they would clean dishes and stove tops after preparing food or cooking for clients (AF¶31).  They also cleaned the area where the client ate. Specifically, Severin testified that if the client ate in bed, she would change the sheets and clean

up the floor to avoid a "slip and fall" (*id.*). In fact, her longest-term client, "always spilled something on the floor" and she "always" cleaned it up, otherwise "she would slip and fall" (*id.*). Cotova testified that she would not clean a client's kitchen if it had not been used and was already spotless (*id.*).

In addition, Severin (but not Cotova), alleges that she was also required to wash window and blinds, and move furniture (Pls. Stmt., ¶6).[7] Project OHR sharply disputes whether Severin performed these "heavy" cleaning activities. First, Project OHR policy strictly prohibits the performance of these activities, and it continuously trains its employees regarding this prohibition (RF¶¶6, 9, 11, 15, 16). Second, the HRA Task Sheets, Nurse's Assessment Visit Reports, and plans of care (except for the cleaning of refrigerators on a monthly basis) did not include any "heavy" cleaning tasks on their forms (RF¶¶6, 16). Third, other home attendants who serviced some of the same clients Severin and Cotova serviced, unequivocally stated that they do not perform heavy duty cleaning, including the activities Severin claims she performed (RF¶¶6, 15-16, 18; AF¶33). Fourth, family members of Severin and Cotova's clients have also confirmed that they (and the clients) never asked or required a home attendant to perform heavy cleaning (RF¶6; AF¶33).

C.   An Issue of Material Fact Exists Regarding Whether Plaintiffs
     Performed General Household Work Less Than 20% of the Time

Even if there was no dispute over the types of general household work plaintiffs performed, the evidence still demonstrates an issue of fact exists regarding whether they performed general household work less than 20% of the time for each week of work.

---

[7]   Severin also claims she was required to do "laundry by hand" (Pls.' Stmt. ¶6), but laundry is clearly exempt household work. 29 C.F.R. §552.6.

Plaintiffs attempt to turn this into an "off the clock"-type overtime case by claiming that defendants could never prove to a jury that they spent less than 20% of their workweek performing general household work, because Project OHR (i) "has no way of knowing how many hours per week home attendants spend on household tasks," (ii) "did not, and could not, monitor the number of hours Plaintiffs spent on their work," (iii) had "no idea what Plaintiffs actually did while on the job, let alone how much time they spent on a given task," and (iv) had no mechanism for keeping track of how much time home attendants spend doing household work." (Pls.' Mem., p. 18).   But, as analogous "off the clock" cases tell us, the absence of records demonstrating hours worked does not mean a plaintiff automatically prevails.

For example, in *Gunawan v. Sake Sushi Restaurant*, 09 Civ. 5018, 2011 WL 3841420 (E.D.N.Y. Aug. 26, 2011), despite the absence of records, the Court permitted the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at *4 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-86 (1946)).   After noting that the parties had offered conflicting deposition testimony and declarations on the issue, the court stated that the "issue of wages paid for hours worked is essentially one of credibility, and for that reason it is inappropriate for resolution at the summary judgment stage." *Id.*   The result should be no different here as the dispute over the 20% issue depends upon credibility determinations, as plaintiffs claim they performed certain unauthorized tasks for extended periods of time without direct supervision.

Further, as set forth in more detail in defendants' Rule 56.1 responses, the actual evidence elicited during discovery presents a much different story.   First, if a home attendant complained about requests for heavy or too much cleaning, or whenever a client called to

23

complain about the lack of cleaning, Project OHR personnel spoke directly with the client to enforce the restrictions, and the problem would be "resolved" (RF¶¶6, 15-16, 18).  Second, Project OHR personnel specialists make unannounced telephone calls or visits to client homes, and nurses make home visits every ninety days to monitor home attendant activity (RF¶¶6, 18).  Third, the HRA Task Sheets, Nurse's Assessment Visit Reports and plans of care all support the conclusion that plaintiffs could not exceed the 20% limit (RF¶¶6, 16, 20).  Fourth, other home attendants and family members of clients submitted declarations providing general household work time estimates that fell well below the 20% cap (RF¶¶15-16; AF¶33 (light cleaning each week never exceeded an hour or two)).  Fifth, Individual Client Activity Reports show that plaintiffs did not perform any cleaning (whether related or unrelated to the client) during certain shifts) (RF¶16).  *See Terwilliger*, 42 F. Supp. 2d at 1251 (entering judgment in defendants' favor based on a similar showing).  *See also Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 365 (2d Cir. 2010) (in off the clock case, written policies and training materials and other reports regarding plaintiff's work "raise[d] factual and credibility questions for trial").

In addition, plaintiffs' testimony alone could permit a jury to conclude that they spent far less than 20% on general household work.  Severin and Cotova described an environment where, among other things, they could spend up to one-third of their shifts walking with a client, four hours cooking and feeding a client, two hours assisting the client with bathroom needs, an hour dressing the client, one hour grooming the client, three hours sitting on a park bench, four hours waiting at a doctor's appointment, two hours doing laundry, and two hours running errands for the client (AF¶¶14-25).  Assuming plaintiffs worked a standard 12-hour shift, and assuming they performed only some of these activities during their shift, they could hardly have enough time to perform nearly two and half hours of general household work during that shift.

A jury would also likely question plaintiffs' credibility based on their claims – like Cotova's claim that she spent up to 20 minutes to clean a bathroom sink, or Severin's claim that she spent one and half hours each week cleaning the refrigerator of her client who was not permitted in the kitchen and who, according to Severin, was so "demented" that she did not even know what a refrigerator was (AF¶¶26-28).  These types of statements – which, by themselves, are so incredible –should warrant denial of plaintiffs' motion.[8]

The evidence demonstrates that there is a clear issue of material fact over whether plaintiffs spent less than 20% of their time performing general household work – an issue that is for a jury to decide.

## CONCLUSION

For these reasons, defendants, Project OHR, Inc. and D'vorah Kohn, respectfully request that the Court deny plaintiffs' motion to authorize a collective action notice and partial motion for summary judgment.

Dated:   November 29, 2011
        New York, New York

                                           For Defendants,

                                           By:   /s/ Jennifer B. Rubin
                                               Jennifer B. Rubin
                                             e-mail: jbrubin@mintz.com
                                             Michael S. Arnold
                                             e-mail: msarnold@mintz.com
                                             MINTZ LEVIN COHN FERRIS
                                             GLOVSKY and POPEO, P.C.
                                             The Chrysler Center
                                             666 Third Avenue
                                             New York, New York 10017
                                             Tel:  (212) 935-3000
                                             Fax:  (212) 983-3115

---

[8]   Further, if we accept plaintiffs' allegation that they "worked" every single one of the 48 hours of their weekend shifts, plaintiffs would have to have spent more than nine and half hours cleaning small one bedroom or studio apartments every single week to exceed the 20% cap.  On its face, this allegation is incredible.