UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
NATASHA SEVERIN and GALINA
COTOVA, individually and on Behalf of                    No. 10 Civ. 9696(DLC)
all others similarly situated,

               Plaintiffs,

    - against -

PROJECT OHR, INC.,

               Defendant.
--------------------------------------------------------------X

**DEFENDANT PROJECT OHR, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

MINTZ LEVIN COHN FERRIS GLOVSKY and POPEO, P.C.
666 Third Avenue
New York, New York 10017
(212) 935-3000

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ...................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................................ 2

    1.     Project OHR Pays Its Home Attendants Based on the
            Number of Hours HRA Authorizes and the Type of Shift Worked ..................... 2

    2.     Project OHR Takes Steps to Ensure that its Home
            Attendants Sleep and Report Any Sleeping Issues That Do Arise ....................... 4

    3.     Although it Varies from Client to Client, Project OHR Home Attendants
            Are Expected to Obtain At Least Five Hours of Uninterrupted Sleep .................. 5

**ARGUMENT** ..................................................................................................................... 6

  I.    New York Law Requires Payment of Wages Based on Hours Actually Worked ............. 6

  II.   New York Law Permits Employers To Exclude Home Attendant Sleeping Time............ 9

  III.  The Court Should Decline to Certify a Class Action ........................................................ 12

    A.   Rule 23 Certification Standards .................................................................................. 13

    B.   The Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements ......................................... 15

      1.     The Plaintiffs Cannot Demonstrate That
            Common Questions of Law or Fact Exist............................................................. 15

      2.     Plaintiffs' Proposed Class is Not Ascertainable ................................................. 20

    C.   The Plaintiffs Cannot Satisfy the Predominance
          or Superiority Requirements Under Rule 23(b)(3) ..................................................... 21

      1.     The Plaintiffs Cannot Demonstrate That
            Common Questions Predominate Over Individual Questions ............................. 21

      2.     The Plaintiffs Cannot Demonstrate That a Class Action
            is a Superior Method for Adjudicating These Claims ......................................... 24

**CONCLUSION** ................................................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*Almeida v. Aguinaga*,
    500 F. Supp. 2d 366 (S.D.N.Y. 2007)............................................................... 7, 8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................... 13, 14

*Ballard v. Community Home Care Referral Service, Inc.*,
    264 A.D.2d 747, 695 N.Y.S.2d 130 (N.Y. App. Div. 2d Dep't 1999) .................... 7

*Berger v. Cleveland Clinic Foundation*,
    05 Civ. 1508, 2007 WL 2902907 (N.D. Ohio Sep. 29, 2007) ............................. 12

*Brinker Restaurant Corp. v. Hohnbaum*,
    --- P.3d ----, 2012 WL 1216356 (Cal. Apr. 12, 2012) ................................... 12, 16

*Chen-Oster v. Goldman, Sachs & Co.*,
    10 Civ. 6950(LBS)(JCF), 2012 WL 205875 (S.D.N.Y. Jan. 19, 2012).......... 21, 22

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ....................................................................... 22

*Dong v. CCW Fashion, Inc.*,
    06 Civ. 4973(LAP)(DFE), 2009 WL 884680 (S.D.N.Y. Feb. 19, 2009)........... 7, 8

*Engel v. Scully, Inc.*,
    --- F.R.D. ----, 2011 WL 4091468 (S.D.N.Y. Sept. 14, 2011)................ 14, 18, 20

*Espinoza v. 953 Assocs., LLC*,
    --- F.R.D. ----, 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011)...................... 13, 14

*Joza v. WW JFK LLC*,
    07 Civ. 4153, 2010 WL 3619551 (E.D.N.Y. Sep. 10, 2010)................... 11, 12, 17

*Li Ping Fu. v. Pop Art Int'l Inc.*,
    10 Civ. 8562(DLC)(AJP), 2011 WL 4552436 (S.D.N.Y. Sep. 19, 2011) ........... 11

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)................................................... 13, 14, 21, 22

*Oakley v. Verizon Communications Inc.*,
    09 Civ. 9175, 2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) ....................... 15, 21, 24

*Ramos v. Simplex-Grinnell LP*,
    07 Civ. 981, --- F. Supp. 2d ----, 2011 WL 2471584 (E.D.N.Y. Jun. 21, 2011) ................. 11

*Salon Fad v. L'Oreal USA, Inc.*,
10 Civ. 5063(DLC), 2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011) ...................... 14, 18, 21

*Seenaraine v. Securitas Sec. Servs. USA, Inc.*,
37 A.D.3d 700, 830 N.Y.S.2d 728 (2d Dep't 2007)............................................................. 11

*Wal-Mart v. Dukes*,
131 S.Ct. 2541 (2011)......................................................................................*passim*

*White v. Western Beef Properties, Inc.*,
07 Civ. 2345(RJD)(JMA), 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011)........................... 16

### Statutes

Fair Labor Standards Act, 29 U.S.C. §203 ..................................................................... 6

Fair Labor Standards Act, 29 U.S.C. §203(a)(15).......................................................... 6

Fair Labor Standards Act, 29 U.S.C. §206(a)................................................................. 6

Fair Labor Standards Act, 29 U.S.C. §206(f)................................................................. 6

New York Labor Law, §651(5) ...................................................................................... 6, 7

New York Labor Law, §652(1) ...................................................................................... 6, 7

New York Labor Law, §655(5)(b)................................................................................... 7

### Rules

Fed. R. Civ. P. 23..........................................................................................*passim*

Fed. R. Civ. P. 23(a) .......................................................................... 13, 14, 15, 21

Fed. R. Civ. P. 23(a)(1)........................................................................................ 21

Fed. R. Civ. P. 23(a)(2)....................................................................... 15, 20, 21, 22

Fed. R. Civ. P. 23(b) .......................................................................................... 14

Fed. R. Civ. P. 23(b)(3)........................................................................ 14, 21, 22, 23, 24

### Regulations

Minimum Wage Order for Miscellaneous Industries and Occupations,
12 NYCRR §142........................................................................................................ 7

Minimum Wage Order for Miscellaneous Industries and Occupations
12 NYCRR §142-3.1 ................................................................................................. 7, 9

Minimum Wage Order for Miscellaneous Industries and Occupations
12 NYCRR §142-3.1(a) ................................................................................................ 7

Minimum Wage Order for Miscellaneous Industries and Occupations
12 NYCRR §142-3.2 ............................................................................................. 7, 12

29 C.F.R. §785.22 ................................................................................................. 10, 19

RO-9-0169 .................................................................................................................. 10

## PRELIMINARY STATEMENT

Plaintiffs' Rule 23 class certification motion comes on the heels of their failed motion under Section 216 of the Fair Labor Standards Act to authorize a collective action notice, where they argued that a common policy or plan required them and every other Project OHR home attendant to perform general household work more than 20 percent of the time for their clients. This Court denied that motion.  The Court found that the home attendants must individually "tailor their duties – *indeed, their hours* – everything to the needs of the individual client" and that "they are working under general protocols and training and supervision that would, if anything, enforce the exemption and not permit a violation of the FLSA."  Thus, the Court concluded, "the plaintiff would have to establish on an individual plaintiff-by-plaintiff basis that somehow they performed general household work more than 20 percent of the time" – a "fact-specific" inquiry not "really susceptible . . . to a similarly-situated person analysis" (Arnold Decl., Ex. 1 (December 16, 2011 Hearing Transcript) (emphasis added)).

In an attempt to avoid the pitfalls that doomed their effort to satisfy the modest burden for certifying a collective action, plaintiffs' class certification motion substitutes "sleeping time" for "general household work."  Where plaintiffs once claimed that home attendants performed too much general household work, thus entitling them to overtime, they now claim that the home attendants did not get enough sleep and, therefore, Project OHR should have paid them for additional hours worked.  But as with the general household work issue, how much sleep each of the hundreds of Project OHR home attendants obtained on any given shift in any given week while working for hundreds of clients over the course of six years is not susceptible to proof through evidence common to the class as a whole.  Accordingly, class certification is not warranted in this action.

## FACTUAL BACKGROUND

1.  Project OHR Pays Its Home Attendants Based on the
    Number of Hours HRA Authorizes and the Type of Shift Worked

The New York City Department of Social Services/Human Resources Administration (the "HRA") maintains a program that provides certain Medicaid-eligible individuals with "home attendant" services (Ex. 2 (HRA Agreement, D85)).[1]   HRA contracts with dozens of home care agencies like Project OHR to provide these services (*id.*; Ex. 3 (Client Handbook, D3461)).   HRA provides Project OHR with a "service authorization" – a highly personalized document that, among other things, authorizes each qualified individual to receive a specific number of hours of care for a specific number of days each week (Ex. 2 (HRA Agreement, D97-98); Ex. 3 (Client Handbook, D3461-62); Ex. 4 (Deposition of Anna Reydman, dated September 23, 2011 ("Reydman Dep."), pp. 34:5-35:15); Ex. 5 (Deposition of Susan Schaefer, dated September 28, 2011 ("Schaefer Dep."), pp. 19:13-20:24, 26:4-18, 75:12-19); Ex. 6 (Deposition of D'vorah Kohn, dated September 26, 2011 ("Kohn Dep."), pp. 45:16-46:10)).   The number of days and hours of care HRA authorizes for each of Project OHR's 1,200 individual clients varies greatly, ranging from a few hours per week to around-the-clock weekly care (Ex. 2 (HRA Agreement, D98, 105); Ex. 3 (Client Handbook, D3461-62); Ex. 4 (Reydman Dep., pp. 19:8-18, 29:5-30:4, 57:24-25); Ex. 5 (Schaefer Dep., pp. 19:13-20:24, 75:12-19); Ex. 6 (Kohn Dep., pp. 13:5-7, 45:16-46:10, 75:6-11)).

Based on the number of days and hours HRA authorizes, Project OHR is required to schedule its home attendants to work one of three types of shifts in any given workweek – a regular hourly shift, a split-shift or a sleep-in shift (or some combination of these shifts in the

---

[1]   Each exhibit this Memorandum in Opposition references, including Exhibit 1 referenced in the Preliminary Statement, is attached to the Declaration of Michael S. Arnold, dated April 20, 2012, which Project OHR submits with its opposition.

same workweek) (Ex. 2 (HRA Agreement, D105); Ex. 5 (Schaefer Dep., pp. 10:11-19, 27:6-17, 28:15-19); Ex. 6 (Kohn Dep., p. 89:15-22); Ex. 7 (Deposition of Galina Cotova, dated September 8 & 16, 2011 ("Cotova Dep."), pp. 29:23-30:16, 37:2-38:22, 43:25-46:22, 48:13-16), Ex. 8 (Deposition of Natasha Severin, dated September 20, 2011 ("Severin Dep."), pp. 22:15-26:15), Ex. 9 (Declaration of Blossom King, dated April 19, 2012 ("King Decl."), ¶2); Ex. 10 (Time and Attendance Records for Severin and Cotova)).   The number of hours scheduled in a regular hourly shift may vary, but these shifts do not exceed 12 hours (Ex. 6 (Kohn Dep., pp. 55:16-56:7); Ex. 7 (Cotova Dep., p. 44:5-8), Ex. 8 (Severin Dep., pp. 22:15-26:15); Ex. 11 (Nurse's Assessment Visit Reports, D3139-47)).   A split shift occurs when a client needs around-the-clock 24-hour care and requires one home attendant to work a daytime 12-hour shift and a different home attendant to work a separate nighttime 12-hour shift (Ex. 4 (Reydman Dep., pp. 53:21-54:22); Ex. 5 (Schaefer Dep., pp. 27:18-28:2); Ex. 6 (Kohn Dep., pp. 44:22-45:5)).   The home attendant working the nighttime split-shift is not permitted to sleep on that shift (Ex. 12 (Employee Handbook, D57)).   Clients who require less intensive home care and monitoring may instead be scheduled for a sleep-in shift, which lasts for a period of 24 hours, but, as is self-evident from the name, the home attendant is expected to sleep at nighttime (Ex. 4 (Reydman Dep., pp. 55:15-56:7); Ex. 5 (Schaefer Dep., pp. 28:2-30:16); Ex. 6 (Kohn Dep., pp. 32:13-33:5, 43:2-44:4, 52:15-53:3); Ex. 9 (King Decl., ¶3)).

HRA requires Project OHR (like other not-for-profit home care agencies) to pay its home attendants working these shifts in accordance with the wage provisions in their collective bargaining agreement ("CBA") (Ex. 2 (HRA Agreement, D105); Ex. 13 (CBA, D8-10)).   The CBA requires Project OHR to pay its home attendants working regular hourly or split-shifts at a specific hourly rate for each hour of their shift, while those working a sleep-in shift receive a per

diem amount (Ex. 13 (CBA, D8-10)). The specific amounts, which have increased over time, depend primarily on whether the home attendant services one or more clients on the same shift and whether they work on a weekday or weekend. From January 1, 2005 to December 31, 2007, Project OHR paid its home attendants working hourly or split shifts an hourly wage ranging from $9.60 to $11.65 and its home attendants working sleep-in shifts a per diem amount ranging from $132.15 to $156.75. From January 1, 2008 to the present, Project OHR has paid its home attendants working regular or split shifts an hourly wage ranging from $10.00 to $11.75 and its home attendants working sleep-in shifts a per diem amount ranging from $136.95 to $157.95 (Ex. 12 (Employee Handbook, D81, 173, 211); Ex. 13 (CBA, D8-10, 29-30, 33-34, 40-41)).

2.     Project OHR Takes Steps to Ensure that its Home
       Attendants Sleep and Report Any Sleeping Issues That Do Arise

Project OHR takes certain steps to ensure that its home attendants do in fact sleep during their sleep-in shifts, and that home attendants report any sleeping issues that do arise.

First, Project OHR asks applicants to identify whether they would be willing to work a sleep-in shift and informs them that they will not be paid for the sleeping time, and later, if they are hired, Project OHR requires them to enter into a sleep-in agreement before it will schedule them to work a sleep-in shift (Ex. 5 (Schaefer Dep., pp. 8:5-18, 10:11-19, 31:3-8); Ex. 9 (King Decl., ¶3); Ex. 14 (Sleep-in Agreements, D300, 1294); Ex. 17 (Application, D1309-10). Some home attendants do not work sleep-in shifts as a result (Ex. 6 (Kohn Dep., p. 89:15-22)).

Second, Project OHR ensures that its home attendants understand what is expected during a sleep-in shift. Specifically, they learn during the new hire process, at mandatory biannual formal training sessions and informally throughout the year that Project OHR provides home attendants with at least an eight hour window to sleep and that home attendants should obtain, and are expected to obtain, at least five hours of sleep without interruption each sleep-in

shift (Ex. 4 (Reydman Dep., pp. 38:23-39:18); Ex. 5 (Schaefer Dep., pp. 11:4-24, 31:16-23, 49:17-23); Ex. 6 (Kohn Dep., pp. 43:5-44:4, 46:11-47:3, 47:25-48:19, 111:7-11); Ex. 9 (King Decl., ¶4)).  To account for the eight hour sleeping period, home attendants are also prohibited from working in excess of 16 hours per day (Ex. 12 (Employee Handbook, D56)).

Third, consistent with HRA requirements, nurses and personnel specialists also train the home attendants at the mandatory training sessions and throughout the year that they *must* report any client-related issue, including disruptions to their sleep (Ex. 2 (HRA Agreement, D115); Ex. 4 (Reydman Dep., pp. 38:23-39:18); Ex. 5 (Schaefer Dep., pp. 11:4-24, 31:16-23, 49:17-23); Ex. 6 (Kohn Dep., pp. 43:5-44:4, 46:11-47:3, 47:25-48:19, 111:7-11); Ex. 9 (King Decl., ¶5)).

Fourth, if a client's condition worsens, so that sleeping becomes an issue, then a Project OHR nurse or personnel specialist, after being notified by the home attendant, will work with the client's family to resolve the issue, or will recommend to HRA that the client receive split-shift care rather than sleep-in shift care so that Project OHR may schedule a home attendant to work a separate night shift that prohibits sleeping (Ex. 3 (Client Handbook, D3461, 3466); Ex. 4 (Reydman Dep., pp. 28:6-29:4, 39:19-40:6, 48:12-50:14); Ex. 5 (Schaefer Dep., pp. 30:22-31:15, 76:8-78:5); Ex. 6 (Kohn Dep., pp. 46:18-47:3, 75:6-76:5); Ex. 9 (King Decl., ¶10); Ex. 11 (Nurse's Assessment Visit Report, D3139-47) (requesting change from sleep-in to split-shift home care); Ex. 15 (identifying transfer from sleep-in to split-shift)).

3.    Although it Varies from Client to Client, Project OHR Home Attendants Are Expected to Obtain At Least Five Hours of Uninterrupted Sleep

Based on its training procedures and other mechanisms, Project OHR makes its home attendants aware of what is expected on a sleep-in shift, including the expectation that they will be "sleeping at least five consecutive hours and hopefully more than that, but at least five consecutive" (Ex. 6 (Kohn Dep., pp. 43:9-44:4)).  Project OHR remains under the belief that

home attendants obtain sufficient sleep because it "[doesn't] have complaints otherwise" (*id.* pp. 46:11-48:6).  Indeed, clients do sleep through the night, and home attendants do obtain at least five uninterrupted hours of sleep (Ex. 9 (King Decl., ¶¶6, 8-9); Ex. 16 (Vladimrov Decl., ¶3)).

The amount of actual sleep obtained differs for each home attendant on each shift for each workweek because each client sleeps for a different period of time during each shift (Ex. 5 (Schaefer Dep., p. 30:3-9); Ex. 9 (King Decl., ¶¶7-8)).  A client's ability to sleep depends upon, among other factors, their physical and mental state, their level of daily activity, the medicines they are taking, whether they live and sleep alone in a bed and their nightly bathroom needs – which differs for each client (Ex. 5 (Schaefer Dep., p. 30:3-9); Ex. 6 (Kohn Dep., pp. 45:16-46:10); Ex 7 (Cotova Dep., pp. 97:23-98:4); Ex. 9 (King Decl., ¶¶7-9)).

## ARGUMENT

To determine whether the claims of a putative class may be adjudicated on a representative basis, it is first necessary to examine relevant wage and hours issues.

## I.   New York Law Requires Payment of Wages Based on Hours Actually Worked

Like the Federal Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL") currently requires covered employers to pay non-exempt employees a minimum wage of at least $7.25 per hour for each hour worked.  FLSA, 29 U.S.C. §§203, 206(a) & (f); NYLL, §652(1).  Unlike the FLSA however, the NYLL does not exempt "companions" from its minimum wage or overtime requirements.  *Compare* NYLL, §651(5) *with* FLSA, 29 U.S.C. §203(a)(15).

Instead, if the home attendant qualifies under the FLSA companion exemption, the New York Labor Law requires an employer to pay a home attendant an additional overtime premium *at one and one half times the statutory minimum hourly rate* as opposed to one and one half times the home attendant's regular hourly rate if the home attendant does not qualify.  *See* 12

6

NYCRR §142-3.2 (emphasis added).[2]  Plaintiffs allege violations from December 31, 2004 through the present, and from January 1, 2005 to the present, the statutory minimum wage rate ranged from $6.00 to $7.25, and when multiplied by 1.5 times, the statutory overtime rate ranged from $9.00 to $10.875.  NYLL, §652(1); Wage Order, §§142-3.1(a), 3.2.

Because employers are only required to pay overtime at one and one half times the *statutory minimum wage* and not at one and one half times the employee's *regular hourly rate*, an additional statutory overtime premium is only due when the total weekly wages the employee actually receives is less than the total statutory wages due to the employee in that workweek.  *See Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 369 (S.D.N.Y. 2007) (dismissing overtime claims where actual wages received exceeded statutory wages due); *Dong v. CCW Fashion, Inc.*, 06 Civ. 4973, 2009 WL 884680, at *5 & Appendix  (S.D.N.Y. Feb. 19, 2009) (calculating wages owed by comparing actual wages received against statutory wages owed).  In other words, when an employer pays its employees a sufficient amount of weekly wages, no additional overtime premium will be due, because the premium will already be subsumed in those weekly wages.

In *Almeida* for example, the plaintiff-home attendant alleged, among other things, that she did not receive overtime in violation of the NYLL.  The statutory minimum wage rate at the time (2004) was $5.15 and the statutory overtime rate, therefore, was $7.725 ( = $5.15 x 1.5).  As the Court explicitly held, "nothing in the New York regulations requires allocating [plaintiff's] whole weekly pay to her first 44 hours of work, and thereafter granting her an additional $7.725

---

[2]    The New York State Minimum Wage Act, §651 *et seq.*, which is part of the NYLL, does not address overtime requirements.  Instead, it empowered the Commissioner of Labor to appoint a wage board to address overtime and other wage requirements through wage orders.  *See* NYLL, §655(5)(b); *Ballard v. Community Home Care Referral Service, Inc.*, 264 A.D.2d 747, 747-48, 695 N.Y.S.2d 130, 131 (N.Y. App. Div. 2d Dep't 1999).  One of these wage orders is entitled the Minimum Wage Order for Miscellaneous Industries and Occupations (12 NYCRR §142 *et seq.*) (the "Wage Order"), and it is broken down into two parts: (i) Subpart 142-2, which applies to employees other than those working at non-profit institutions, and (ii) Subpart 142-3, which applies to employees working at non-profit institutions that did not elect to exempt themselves from coverage under the Wage Order, the latter of which applies to Project OHR.

for each hour of overtime." *Id.* at 368.[3]   Instead, the "correct comparison is between the total amount of money . . . she received each week from her employers and the whole amount she was entitled to under the New York regulations." *Id.*   There, during one period in question, the plaintiff was paid actual weekly wages totaling $663.93 for 99 hours of work.   The total statutory wages due equaled $651.48, calculated as follows:

> *Total minimum wages required per week* = $5.15 x 44 regular hours = $226.60
> *Total overtime wages required per week* = $7.725 x 55 overtime hours = $424.88
> *Total required NYLL compensation* = $226.60 + $424.88 = $651.48.

Because the $663.93 in actual weekly wages received exceeded the $651.48 in statutory wages due by $12.45, the overtime owed was subsumed in the weekly wages actually paid and the employer did not owe the plaintiff any additional overtime premium.   *Id.* at 368 & Appendix. *See also Dong*, 2009 WL 884680, at Appendix (performing same calculations).

Project OHR currently pays its home attendants working hourly or split shifts exclusively in a workweek between $10.00 and $11.75 per hour for each hour of their shift (*see* p. 4, above). Therefore, these home attendants receive hourly wages at least $2.75 above the minimum wage for each hour worked, and no additional overtime premium would be due because the actual weekly wages the home attendant receives by working these shifts will always equal or exceed the total statutory wages due.[4]   For example, a Project OHR home attendant who works four 12-hour regular weekday shifts in one workweek is entitled to $480.00 in weekly wages (48 hours x $10.00).   The total statutory wages due to this home attendant pursuant to the NYLL however, is

---

[3]   Under New York law, home attendants who "reside" on their employer's premises become overtime-eligible after 44 hours of work, whereas those who work for third-party agencies, like Project OHR, become overtime eligible after 40 hours of work.   Wage Order, 142-3.2.

[4]   This was also true before 2008 when Project OHR paid its home attendants at lower hourly rates.   For example, in 2006, Project OHR paid home attendants working hourly or split shifts an hourly rate of at least $9.60, but the statutory minimum wage rate was only $6.75 at the time (Ex. 13 (CBA, D8-10, 33-34)).

just $377.00, calculated as follows:

> *Total minimum wages required per week* = $7.25 x 40 regular hours = $290.00
>
> *Total overtime wages required per week* = $10.875 x 8 overtime hours = $87.00
>
> *Total required NYLL compensation* = $290.00 + $87.00 = $377.00.

In this example, because the home attendant's actual wages of $480.00 for 48 hours of work exceeds the total statutory wages due of $377.00 by $103.00, Project OHR would not owe this home attendant any additional overtime pay.

Project OHR currently pays its home attendants who work sleep-in shifts a per diem rate of at least $136.95 that excludes sleeping (and meal) time from the calculation of hours "worked" from the 24-hour shift.   When excluding this time, Project OHR pays its home attendants working these shifts at a sufficient rate to satisfy the NYLL's minimum wage and overtime requirements.   In their Moving Brief however, plaintiffs argue that Project OHR was not permitted to exclude any sleeping (or meal) time and they posit that Project OHR therefore violated the NYLL's minimum wage and overtime requirements when it did not pay home attendants for each hour of the sleep-in shift (Pls.' Mem., p. 10).   As explained below, plaintiffs' argument lacks merit.

## II.   New York Law Permits Employers To Exclude Home Attendant Sleeping Time

The New York State Department of Labor's Wage Order states that employers must pay the minimum wage "for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer . . . ."  Wage Order §142.3-1.  It also states that a "residential employee--one who lives on the premises of the employer--shall not be deemed to be permitted to work or required to be available for work: (1) during his or her normal sleeping hours solely because such employee is required to be on call during such hours; or (2) at any other time when he or she is free to leave the place of employment."   Plaintiffs seize on this

language in the Wage Order to argue that Project OHR cannot exclude sleeping time because the home attendants were not "residential" employees.

The analysis does not end there however, as non-residential home attendants need not be paid for time they are "subject to call" rather than "on-call."  Specifically, in a March 11, 2010 Opinion Letter (RO-9-0169) (attached as Exhibit 18 to the Arnold Declaration) – an Opinion Letter that plaintiffs do not reference anywhere in their Moving Brief – the New York State Department of Labor interpreted its Wage Order to confirm that third-party home care agencies (like Project OHR) may exclude the sleeping time of their home attendants even though they do not qualify as "residential" employees because they are "subject to call."  Critically, the Opinion Letter states that while the "residential vs. non-residential distinction" is relevant for selecting 40 or 44 hours as the *overtime* hour threshold to apply to a home attendant working a "live-in" shift (the equivalent to Project OHR's "sleep-in" shift), the New York State Department of Labor applies the following "test for determining the *number of hours worked* by *all* live-in employees":

> [I]t is the opinion and policy of this Department that live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals.  If an aide does not receive five hours of uninterrupted sleep, the eight-hour sleep period exclusion is not applicable and the employee must be paid for all eight hours.  Similarly, if the aide is not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable.

*Id.* (emphasis added).[5]  "Because the New York State Department of Labor is charged with

---

[5]    The United States Department of Labor has a similar interpretative regulation regarding the exclusion of sleeping time, which will apply to plaintiffs to the extent they are *not* exempt as FLSA companions.  *See* 29 C.F.R. §785.22.  However, the New York State Department of Labor Opinion Letter differs in two significant respects: (1) the employee and the employer need not enter into an express or implied "agreement" to exclude the eight hours of sleeping time (or meal time); and (2) the employer need not ensure that the employee has adequate sleeping facilities.  *Compare* RO-9-0169 *with* 29 C.F.R. §785.22.

enforcing New York's [Wage Order]" – a Wage Order which it promulgated – its interpretations, including those set forth in this Opinion Letter, are "entitled to deference." *See Li Ping Fu. v. Pop Art Int'l Inc.*, 10 Civ. 8562(DLC)(AJP), 2011 WL 4552436, at *7 (S.D.N.Y. Sep. 19, 2011) (citing *Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 37 A.D.3d 700, 701-02, 830 N.Y.S.2d 728, 729 (2d Dep't 2007). *See also Ramos v. Simplex-Grinnell LP,* 07 Civ. 981, --- F. Supp. 2d ----, 2011 WL 2471584, at *15 (E.D.N.Y. Jun. 21, 2011) (cited by plaintiffs) ("The New York Court of Appeals has repeatedly held that agency interpretations, including formal and informal opinions, are entitled to deference unless they are irrational, unreasonable, or go against the plain meaning of the relevant statute").  The New York State Department of Labor's interpretation of excludable sleeping time makes sense and is sound policy.  Employees who sleep and are subject to call are not working and should not expect to be paid during that time regardless of where they "reside."  Further, as required by HRA, Project OHR (like other home care agencies) entered into the CBA with the understanding that the amounts paid would differ for sleep-in shifts and regular hourly and split shifts to account for this sleeping time.  It would be non-sensical for HRA to authorize, and for home care agencies to provide, sleep-in care – a type of shift literally designed so that the home attendant would sleep on the shift – if split-shift care – which provides the client with more care than sleep-in care – would be available at the same cost.

Thus, New York law permits Project OHR to exclude eight hours of sleeping time from the calculation of hours worked by its home attendants.  This eight-hour amount is excludable as long as the home attendant actually receives five hours of uninterrupted sleep.  Since they are alone at a client's residence at night, it is incumbent on the home attendant to report to Project OHR whether they do not obtain five uninterrupted hours of sleep during each shift – something Project OHR mandates of its home attendants (*see* p. 5, above).  *See e.g. Joza v. WW JFK LLC*,

11

07 Civ. 4153, 2010 WL 3619551, at *7-11 (E.D.N.Y. Sep. 10, 2010) (overtime claims failed where "defendants' lack of such knowledge (even if the work was performed) [was] directly attributable to plaintiff's determination not to comply with the established overtime reporting and compensation procedure"); *Berger v. Cleveland Clinic Foundation*, 05 Civ. 1508, 2007 WL 2902907, at *13 (N.D. Ohio Sep. 29, 2007) (an employee cannot undermine his employer's efforts to comply with wage laws by "consciously omitting . . . hours for which he knew he could be paid"). *Cf. Brinker Restaurant Corp. v. Hohnbaum*, --- P.3d ----, 2012 WL 1216356, at *28 n.19 (Cal. Apr. 12, 2012) (employer satisfies meal period obligation where it affords employees meal time, permits them the reasonable opportunity to take the meal period and does not discourage them from doing so).

## III.   The Court Should Decline to Certify a Class Action

Plaintiffs state in their Moving Brief that they "seek to certify a class consisting of home attendant employees who have been employed by [Project OHR] at any time from December 30, 2004 through the date [Project OHR] ceases its unlawful acts, who work 24-hour shifts and/or who work more than 40 hours per week (the 'class')" (Pls. Mem., p. 7). Phrased this way, it appears that plaintiffs seek to certify as a class those home attendants working sleep-in shifts (whether they work more or less than 40 hours in a workweek), and those home attendants who work more than 40 hours in a workweek regardless of the type of shift they work. Such a class does not warrant certification.

As an initial matter, those home attendants "who work more than 40 hours per week" do not belong in any class for two reasons. First, the Wage Order requires the Court to determine whether the FLSA companion exemption applies to each home attendant in order to determine whether each home attendant should be paid at one and one half times the statutory minimum wage rate or at one and one half times the employee's hourly rate. Wage Order §142-3.2. The

Court previously found that this determination must be made on a home attendant by home attendant basis and was not susceptible to a "similarly situated" person analysis (Ex. 1, pp. 5-6). Therefore, this same analysis certainly could not satisfy Rule 23's stricter standards.  *Espinoza v. 953 Assocs., LLC*, --- F.R.D. ----, 2011 WL 5574895, at *6 (S.D.N.Y. Nov. 16, 2011) (Rule 23's requirements are "more stringent" than those of the FLSA's "similarly situated" requirement).

Second, even if plaintiffs concede that each home attendant is a FLSA exempt companion, and therefore overtime is due at only one and one half times the statutory minimum wage, this proposed class still includes home attendants that have no possible claim.  As explained in Section I above, Project OHR pays its home attendants working regular hourly or split shifts exclusively in a workweek for each hour of their shift at a beginning rate of $10.00 per hour – well above the minimum wage for each hour worked, and such that home attendants receive actual wages that subsume any overtime premiums due.

That leaves the first part of plaintiffs' proposed class – those home attendants "who work 24-hour shifts."  As explained below, certification of such a class is not warranted.

A.    Rule 23 Certification Standards

The Supreme Court has made it clear that class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and that any departure from that rule requires a class representative to "possess the same interest and suffer the same injury as the class members."  *Wal-Mart v. Dukes*, 131 S.Ct. 2541, 2550 (2011).  Rule 23 of the Federal Rules of Civil Procedure acts as the procedural gatekeeper to ensure the proper application of this class action exception.

Specifically, Rule 23 prohibits an action from moving forward on a representational basis if plaintiffs cannot demonstrate any one of the four requirements under Rule 23(a).  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591 (1997)).  More specifically, plaintiffs must demonstrate by a preponderance of the evidence that a proposed class action (1) would involve a sufficient number of individuals, (2) involve common questions of law or fact common to the class, (3) involve plaintiffs whose claims are typical of the class members, and (4) involve a class representative or representatives who will represent the interests of the class adequately.  Fed. R. Civ. P. 23(a); *Myers*, 624 F. 3d at 547; *Salon Fad v. L'Oreal USA, Inc.*, 10 Civ. 5063(DLC), 2011 WL 4089902, at *5 (S.D.N.Y. Sept. 14, 2011).  Courts in the Second Circuit have also implied a fifth requirement into Rule 23(a) – "that a class be identifiable."  *See, e.g., Engel v. Scully v. Scully, Inc.*, --- F.R.D. ----, 2011 WL 4091468, at *8 (S.D.N.Y. Sept. 14, 2011).

If the plaintiffs satisfy each of these first five procedural hurdles, then they still must qualify their proposed class under one of Rule 23(b)'s three available types of class actions. Here, plaintiffs have asserted that their proposed class action qualifies under Rule 23(b)(3) – the third type of class action, which permits class certification (1) if questions of law or fact common to class members "predominate" over any questions affecting only individual members; and (2) class litigation is "superior" to other available methods for fairly and efficiently adjudicating the controversy.  FRCP 23(b)(3); *Salon*, 2011 WL 4089902, at *5.

Rule 23's requirements are "more stringent" than the FLSA's "similarly situated" requirement, and to satisfy them, the plaintiffs must provide "enough evidence, by affidavits, documents, or testimony" to satisfy their burden.  *Espinoza*, 2011 WL 5574895, at *6; *Salon*, 2011 WL 4089902, at *5 (citations omitted).  Because plaintiffs cannot meet their evidentiary burden to satisfy all of Rule 23's requirements, the Court should decline to certify a class.

B.       The Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements

      1.       The Plaintiffs Cannot Demonstrate That
                Common Questions of Law or Fact Exist

Rule 23(a)'s requirement of commonality requires plaintiffs to demonstrate the existence of questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Plaintiffs' central argument is that Project OHR's so-called "policy of failing to pay home attendants the minimum wage for their nighttime hours and failing to pay them one and one half times the minimum wage for hours in excess of 40 per work week" constitutes a "common wrong" that "alone" is "enough to satisfy Rule 23(a)(2)" (Pls.' Mem., p. 8).

But plaintiffs' allegation of a "common wrong" misses the point.  An alleged failure to pay the home attendants' minimum wages and overtime is not a policy; it is the potential *result* of a policy as applied to circumstances relevant to a specific putative class member.  *See Oakley v. Verizon Communications Inc.*, 09 Civ. 9175, 2012 WL 335657, at *14 (S.D.N.Y. Feb. 1, 2012) (commonality not found because so-called "policy" to "illegally" deny employees FMLA leave is "not the right kind" of common question); *Wal-Mart*, 131 S.Ct. at 2551 ("Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury," is insufficient).[6]

Even if one concedes for argument's sake that a failure to pay wages in connection with a particular shift could constitute evidence of a "uniform policy," plaintiffs have still failed to offer the "significant" or "convincing" proof that the Court required in *Wal-Mart v. Dukes* to demonstrate that such a policy in fact existed.  *See Wal-Mart*, 131 S. Ct. at 2548 (rejecting class certification on the ground that the plaintiffs had failed to present "significant" and "convincing"

---

[6]    *See also* Docket No. 36, pp. 15-16 (addressing plaintiffs' nearly identical argument attempting to establish that each home attendant is "similarly situated" for purposes of authorizing a collective action notice).

proof of a general policy of discrimination at the class certification stage).  *See also, e.g., White v. Western Beef Properties, Inc.*, 07 Civ. 2345(RJD)(JMA), 2011 WL 6140512, at *5 (E.D.N.Y. Dec. 9, 2011) (finding no significant proof of a policy to "assign managerial titles to workers who duties were for the most part not managerial for the purpose of evading the legal obligation to pay overtime); *Brinker*, 2012 WL 1216356, at *26 (plaintiff failed to present "substantial evidence of a systematic company policy to pressure or require employees to work off the clock" during their allotted meal periods).

Specifically, plaintiffs have failed to offer significant and convincing proof that Project OHR instituted a policy that precluded or discouraged each of its home attendants from obtaining five hours of uninterrupted sleep during each sleep-in shift.

First, plaintiffs point to their own testimony that they "often" did not receive sufficient sleep (Pls.' Mem., p. 4).  This alone is insufficient, and even if accepted as true, it does not demonstrate that Project OHR discouraged them from sleeping or that a single one of the 1,700 other home attendants shared their experiences or were discouraged from sleeping.  Certainly other home attendants did not have trouble sleeping as the King Declaration submitted with Project OHR's Opposition demonstrates (King Decl., ¶9).

Second, plaintiffs argue that a uniform policy *discouraging* sleep exists because Project OHR failed to institute a sufficient uniform *written* policy *encouraging* sleep (Pls.' Mem., p. 4). This twisted logic, which presumes non-compliance with corporate policy, must be disregarded. *Cf. Wal-Mart* (rejecting the argument that company policy giving discretion to store managers in connection with the hiring, firing, promotion and compensation of employees negated Wal-Mart's company-wide anti-discrimination policy because of the possibility that store managers would subvert that policy by discriminating against female employees).  Because Project OHR's

16

corporate policy specifically directed employees to sleep during their sleep-in shifts and to report any sleeping problems they did face, plaintiffs have the burden to prove through evidence, and not mere allegation, that Project OHR conducted itself in some manner that was inconsistent with that policy. *See Joza*, 2010 WL 3619551, at *10 n.5 ("it is well-established that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and do not report").

Third, in an attempt to negate the import of Project OHR policy, plaintiffs argue that "Project OHR made no effort to monitor the amount of sleep home attendants . . . get" (Pls.' Mem., p. 4).  Notwithstanding their burden under Rule 23, plaintiffs do not offer this Court any evidence to support this statement – which is taken out of context from a deposition – and, in fact, the evidence elicited during discovery demonstrates just the opposite is true – that Project OHR took numerous steps to ensure that its home attendants – who worked *alone* at a client's residence – had sufficient sleep, including by instituting complaint procedures to ensure that any sleeping problems were reported and resolved, procedures plaintiffs never followed (*see* pp. 5-6, above).  *Cf. Joza*, 2010 WL 3619551, at *10 n.5 (refusing to adopt plaintiff's argument that employer's mere "ability to investigate" provided it with constructive knowledge of overtime worked because it "would essentially be stating that the [employer] did not have the right to require an employee to adhere to its procedures for claiming overtime") (citation omitted).

Accordingly, because there is insufficient evidence to demonstrate an illegal uniform policy existed, plaintiffs cannot demonstrate a "common wrong" that would entitle each class member to relief and certification is not warranted.

Next, the plaintiffs claim that "[c]ommonality is also satisfied because Plaintiffs and the class share [four] specific questions of fact and law":

     (1)      whether plaintiff home attendants are entitled under the NYLL to the minimum wage for all hours worked during their 24 hour shifts, including nighttime hours;

     (2)      whether plaintiff home attendants are entitled under the NYLL to one and one half times the minimum wage for work hours in excess of 40 per week;

     (3)      how home attendants who performed 24 hour shifts and/or who performed more than 40 daytime hours per week were in fact compensated; and

     (4)      the proper method for calculating damages for home attendants who worked 24 hour shifts without being properly compensated and/or who performed more than 40 daytime hours per week without being properly compensated

(Pls.' Mem., p. 9). These are exactly the types of questions that *Wal-Mart* found are "not sufficient to obtain class certification." *Wal-Mart*, 131 S.Ct. at 2551. A central teaching point that emerged from *Wal-Mart* was that a "common question" for purposes of Rule 23 is one for which the answer will result in a "classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "What matters to class certification" the Supreme Court continued, "is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (emphasis in original). *See also Salon Fad*, 2011 WL 4089902, at *5 (following *Wal-Mart*'s analysis in denying class certification). Had plaintiffs addressed this central teaching point in their Moving Brief, they would have quickly realized that these types of questions do not allow for classwide relief.

     Plaintiffs' first two "questions" are just uncontroversial statements of New York law in question form, and are really being offered to define a class essentially as those home attendants who have valid wage and hour claims. This is circular and does not demonstrate a common question of law. *See Engel*, 2011 WL 4091468, at *8 ("Defining a class as essentially those

customers who have valid FACTA claims is circular.").  The answer to these two "questions" is most obviously "yes," but this does not resolve the relevant question of whether proposed class members "have suffered the same injury."  *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). Whether each home attendant was in fact paid below the minimum wage and/or was owed overtime will depend on whether each home attendant was a FLSA-exempt companion and whether each home attendant obtained five uninterrupted hours of sleep each shift, which as explained in Section III.C below, requires a highly individualized fact-specific analysis not subject to classwide resolution.

Plaintiffs' third question regarding Project OHR's payment methodology also fails to satisfy the commonality requirement.  We know how these individuals were compensated – home attendants working sleep-in shifts received a per diem that varied depending on the type of sleep-in shift they worked (i.e. weekday vs. weekend and single vs. mutual client) (*see* pp. 3-4, above).  As with plaintiffs' first two questions, whether that sleep-in per diem was sufficient to satisfy the NYLL's minimum wage and overtime requirements is entirely dependent on whether each home attendant qualifies as a FLSA-exempt companion and whether each home attendant obtained five uninterrupted hours of sleep each shift – two issues that cannot be resolved on a class basis.

Plaintiffs' fourth question regarding the proper method for calculating damages is what *Wal-Mart* properly characterized as just another way of asking "What remedies should we get?" Such a question is "not sufficient to obtain class certification" because it does not answer whether the employer was liable in the first instance.  *Wal-Mart*, 131 S. Ct. at 2551.

Lastly, plaintiffs argue that a common issue of law exists regarding whether the FLSA's sleeping time regulation (29 C.F.R §785.22) applies to plaintiffs' NYLL claims (Pls.' Mem., p.

10).  This question can only be answered on an individual rather than class basis because it requires the Court to first determine whether each home attendant is a FLSA-exempt companion before it can make a liability determination under the NYLL (*see* pp. 12-13, above).  Further, in posing this question, plaintiffs are also asking whether Project OHR was permitted to exclude sleeping (and meal) time from the weekly determination of "hours worked" by the home attendant.  Plaintiffs contend that the answer to this question is "no", and therefore, when Project OHR excluded those hours, it failed to pay each of its home attendants working sleep-in shifts at the minimum wage and overtime in violation of the NYLL (Pls. Mem., pp. 9-11).  As discussed in Section II above, the answer to this question is in fact "yes", and as discussed in Section III.C below, when answered in the affirmative, it does not allow for classwide resolution of plaintiffs' wage and hours claims "in one stroke."  *Wal-Mart*, 131 S. Ct. at 2251.

Because plaintiffs cannot demonstrate a common question of law or fact, they cannot satisfy Rule 23(a)(2)'s commonality requirement, and on this basis alone, the Court should deny their motion for certification.

### 2.    Plaintiffs' Proposed Class is Not Ascertainable

An ascertainable class is one where "its members can be ascertained by reference to objective criteria," and where the Court does not have to "determine who is in the class and bound by its ruling 'without engaging in numerous fact-intensive inquiries.'"  *Engel*, 2011 WL 4091468, at *8 (citations omitted).

Here, plaintiffs have failed to identify an ascertainable class because there are no objective criteria on which the Court could rely to identify appropriate class members.  Plaintiffs offer this Court sample payroll documents (Smith Decl., Exs. 37-38, 46)), but those documents simply show the number of hours Project OHR credited the home attendant as having worked and the amounts it paid the home attendants.  They do not indicate the amount of time the home

attendant slept while on a sleep-in shift.  The Court would have to engage in thousands of fact-intensive inquiries to determine which home attendants worked a sleep-in shift each day in each week for each of the 1,200 clients over the course of six years and did not receive at least five hours of uninterrupted sleep on each of those shifts, making any class unidentifiable.  Further, without the ability to identify who falls within the class, it is impossible for this Court to determine whether a class is so numerous to make joinder of all parties impracticable under Rule 23(a)(1).  *Oakley*, 2012 WL 335657, at *15.[7]

C.     The Plaintiffs Cannot Satisfy the Predominance
       or Superiority Requirements Under Rule 23(b)(3)

Even if the Court finds that plaintiffs satisfied Rule 23(a)'s requirements, including finding that a common question of law or fact exists, plaintiffs would be unable to satisfy the predominance and superiority requirements in Rule 23(b)(3).

1.     The Plaintiffs Cannot Demonstrate That
       Common Questions Predominate Over Individual Questions

The Rule 23(b)(3) predominance inquiry focuses on whether a proposed class is "sufficiently cohesive to warrant adjudication by representation," and requires plaintiffs to show a common question "can be answered with respect to the members of the class as a whole 'through generalized proof' and that those issues are 'more substantial' than individual ones." *Hertz*, 624 F.3d at 549 (citations omitted).  *See also Salon Fad*, 2011 WL 4089902, at *6.  This determination requires a "rigorous analysis" and is far more demanding than the commonality requirement under Rule 23(a)(2).  *See Salon Fad*, 2011 WL 4089902 at *6; *Chen-Oster v. Goldman, Sachs & Co.*, 10 Civ. 6950(LBS)(JCF), 2012 WL 205875, at *8 (S.D.N.Y. Jan. 19,

---

[7]     Perhaps recognizing the issues posed by certifying their proposed class, plaintiffs ask this Court to certify a sub-class.  But plaintiffs do not offer to define any appropriate sub-class nor do they offer any independent analysis demonstrating that a sub-class will satisfy Rule 23's requirements, making this request inappropriate.  *See Oakley*, 2012 WL 335657, at *13.

2012) (if a plaintiff cannot demonstrate commonality under Rule 23(a)(2), then they cannot meet the "predominance" requirement set forth in Rule 23(b)(3)).

In *Hertz*, the Second Circuit denied class certification to plaintiffs suing on behalf of managers classified as exempt from overtime.  The court noted that the critical question was not whether the employer uniformly decided to exempt the managers, but rather whether each manager was *entitled* to overtime under FLSA.  624 F.3d at 548.  The answer to this question turned on whether each manager qualified under FLSA's executive exemption and required the court to analyze each of the managers' job duties.  *Id.*  To obtain certification, therefore, plaintiffs were required to offer sufficient proof "generally applicable to the class" that the job duties of the putative class members were "largely consistent" across the class and that individual differences in job tasks would not be of the 'magnitude' to 'cause individual issues to predominate.'"  *Id.* (citing *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008)).  The court concluded that plaintiffs had failed to offer sufficient "generalized" proof where they only offered the deposition testimony of one manager and one company executive, each of whom did not testify that the managers' job duties were "generalizable" in any way.  *Id.*

The principles set forth in *Hertz* are no less applicable to home attendant sleeping time.  Here, the named plaintiffs have failed to offer *any* proof, let alone any generalized proof, sufficient to demonstrate that they *and every other home attendant* provided the same care to clients at night and failed to obtain five hours of uninterrupted sleep on each sleep-in shift for each client each workweek over a six-year period.[8]  In fact, plaintiff Cotova could not recall the amount her clients slept on any particular shift (Smith Ex. 44) and, despite having had the

---

[8]  Plaintiffs claim that "predominance will not be defeated by such factual variations as . . . hours" (Pls.' Mem., p. 17).  This argument would make sense if liability had already been established and the parties were simply counting the number of hours worked to determine damages.  This argument is meaningless however, where, as is the case here, plaintiffs must first prove that certain hours on a shift are compensable in order to establish liability.

opportunity to do so during extensive pre-collective *and* pre-class action discovery, neither plaintiff submitted any evidence that any other home attendant provided the same care to their clients at night and experienced the same sleeping issues that plaintiffs allegedly experienced. Nor did they submit any evidence that Project OHR was aware of their own sleeping issues or the alleged sleeping issues of any other home attendant.

Indeed, plaintiffs could not provide such evidence because the type of care a home attendant provides and the amount of time a home attendant sleeps on each sleep-in shift depends on the sleeping habits of each individual client, which in turn depends on many factors, including their physical and mental state, their level of daily activity, the medicines they are taking, whether they live and sleep alone in a bed and their nightly bathroom needs – which differs for each client on each shift on each workweek (*see* p. 6, above).  Thus, even if *plaintiffs* provided the same type of care to their sleep-in clients and failed to obtain five uninterrupted hours of sleep during each of their sleep-in shifts – that does not mean that *any* other home attendant provided that same care at night to their clients and failed to obtain sufficient sleep on each of their sleep-in shifts.

Inevitably, therefore, individual issues would predominate as a fact finder would have to engage in thousands of individual analyses regarding the type of care provided at night and the amount of sleep each home attendant slept on *each* sleep-in shift for *each* client *each* week over the course of their employment before a liability determination could be made.  This is no different than plaintiffs' inability to demonstrate that they were similarly situated to other home attendants on the issues of the types of general household work they performed and the amount of time they spent performing general household work.  Accordingly, plaintiffs cannot satisfy the predominance requirement under Rule 23(b)(3) and the court should not certify a class action.

2.  The Plaintiffs Cannot Demonstrate That a Class Action
is a Superior Method for Adjudicating These Claims

Rule 23(b)(3)'s superiority inquiry focuses on (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Plaintiffs claim that they are "unaware" of any other individual who may want to control the prosecution of a separate action (Pls.' Mem., p. 19).  Yet, plaintiffs are well-aware that Helena Schabowska commenced an identical action against Project OHR in this Court.  11 Civ. 6001.  Further, plaintiffs claim that any "possible recovery on individual claims would quickly be swallowed up by the costs of litigation" (Pls.' Mem., p. 19).  This claim is also unfounded as both FLSA and the NYLL allow for the recovery of attorneys' fees, and as the Court found in *Oakley*, the superiority argument is undercut because individuals can "bring their claims with the assistance of able counsel, who are awarded attorneys' fees if their clients prevail."  2012 WL 335657, at *18.

Plaintiffs also cite to their "experience" that individuals will avoid commencing individual suits for fear of retaliation (Pls.' Mem., p. 19).  Plaintiffs offer no evidence that such an environment exists here, nor does this irresponsible argument make sense, because in theory such a fear should also necessarily extend to an individual's decision to opt out of a class action. In any event, a class action would not be a superior method to adjudicate these claims because of the difficulty of managing this case as a class action.  As explained above, it would require hundreds of mini-trials to resolve the question of sleeping time for each home attendant. Therefore certification should be denied.

## <u>CONCLUSION</u>

For these reasons, Defendant Project OHR, Inc. respectfully requests that the Court deny

plaintiffs' motion to certify a class action.

Dated:   April 20, 2012
         New York, New York

                                    For Defendant,

                            By:   <u>/s/ Michael S. Arnold</u>
                                  Jennifer B. Rubin
                                  e-mail: jbrubin@mintz.com
                                  Michael S. Arnold
                                  e-mail: msarnold@mintz.com
                                  MINTZ LEVIN COHN FERRIS
                                  GLOVSKY and POPEO, P.C.
                                  The Chrysler Center
                                  666 Third Avenue
                                  New York, New York 10017
                                  Tel:   (212) 935-3000
                                  Fax:   (212) 983-3115

6343290v.7