UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
NATASHA SEVERIN and GALINA COTOVA,        :
Individually and on Behalf of All Other   :
Persons Similarly Situated,               :     10 Civ. 9696 (DLC)
                        Plaintiffs,       :
                                          :     OPINION & ORDER
              -v-                         :
                                          :
PROJECT OHR, INC.,                        :
                        Defendant.        :
                                          :
------------------------------------------X

APPEARANCES:

For Plaintiffs:

Jennifer L. Smith
Jason J. Rozner
Beranbaum Menken LLP
80 Pine Street, 32nd Floor
New York, NY 10005

For Defendant:

Jennifer B. Rubin
Michael S. Arnold
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
The Chrysler Center
666 Third Avenue
New York, NY 10017


DENISE COTE, District Judge:

     Plaintiffs Natasha Severin ("Severin") and Galina Cotova

("Cotova") bring the above-captioned action on behalf of

themselves and a putative class of similarly situated persons

who are employed by defendant Project OHR, Inc. ("OHR"), as

providers of home health care for the elderly and infirm in and

around the City of New York.  Plaintiffs allege that OHR failed to pay them and putative class members the minimum wage and overtime, in violation of various provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 <u>et</u> <u>seq</u>., and New York Labor Law ("NYLL"), Art. 6 § 190 <u>et</u> <u>seq</u>., and Art. 19 § 650 <u>et</u> <u>seq</u>.  The plaintiffs have moved for class certification of their NYLL claims pursuant to Rules 23(a) and 23(b)(3), Fed. R. Civ. P.  The motion is denied.

<u>BACKGROUND</u>

OHR is a nonprofit organization providing home health care services in and around New York City to disabled, frail and elderly individuals who qualify for government assistance.  It operates under contract with the New York City Department of Social Services/Human Resources Administration ("HRA"), which refers Medicaid-eligible individuals to OHR and funds OHR's operations.  OHR serves clients referred by HRA principally by sending home attendants to provide companionship assistance at clients' residences.

When HRA refers an individual client to OHR for care, HRA provides OHR with a "service authorization" for that client, which authorizes OHR to provide a specific number of hours of care for a specific number of days a week.  While some OHR clients are only authorized to receive a few hours of care each

week, many are authorized to receive round-the-clock care.  OHR assigns home attendants to provide care to an individual client based upon the hours authorized for that client in the client's service authorization.

When a client is assigned by HRA to OHR, an OHR nurse visits the client and develops a "Client Care Plan", which provides guidance for home attendants assisting the client, including setting forth the tasks home attendants are expected to perform for the client.  Home attendants may be expected to provide both personal care services and household services on behalf of clients, as described in OHR's "Personnel Policies and Practices for Home Attendants Handbook" ("Home Attendant Handbook").  Personal care services may include assistance with ambulation, bathing, dressing, feeding, personal grooming, toileting, and taking medications.  Home attendants may also be expected to escort clients to visit doctors and clinics, and to run errands for clients.  Household services that may be required include basic bathroom and kitchen cleaning and tidying, doing the client's laundry, sweeping, vacuuming, and dusting, and taking out trash.

OHR schedules home attendants to work three types of shifts.  The first, a regular hourly shift, is a daytime shift that can range from a few hours to 12 hours.  The second occurs where HRA has authorized round-the-clock care and supervision.

3

OHR then schedules a split shift, where one home attendant works a 12-hour daytime shift and a second home attendant works a 12-hour nighttime shift.  Home attendants scheduled to a regular or split shift are subject to dismissal for sleeping.  The third, which is the only shift at issue in the plaintiffs' minimum wage claim, is a sleep-in shift.  During a sleep-in shift, a single home attendant spends 24 hours in the client's residence, but is expected to spend part of that time sleeping.  OHR keeps track of the hours worked by home attendants by requiring them to call an "800" number from their clients' home telephones at the start and end of each shift.  The data collected by this automated system is fed directly into OHR's payroll.

According to OHR, those home attendants on sleep-in shifts are instructed to take an eight-hour window in which to sleep and to get at least five hours of continuous sleep.  The Home Attendant Handbook, distributed to all OHR home attendants, states: "Home attendant employees are prohibited from working more than sixteen hours per day."  Blossom King, an OHR home attendant, submitted an affidavit testifying that she and other home attendants were told at their initial orientation and at twice yearly training sessions that on sleep-in shifts they "had at least an eight hour window of sleep and should at least get five hours of sleep without being disturbed by the client."  D'Vorah Kohn ("Kohn"), OHR's executive director, testified that

4

OHR "generally assumes [home attendants working sleep-in shifts] work at least during daytime hours.  They should work up to twelve hours.  They should be sleeping at least five consecutive hours and hopefully more than that, but at least five consecutive."  Kohn further testified that OHR's home attendants were reminded of this policy during the twice-yearly training sessions, and that clients and their families are also informed of the policy.

Susan Schaefer ("Schaefer"), OHR's personnel director, testified that the amount of sleep a sleep-in home attendant could get in a night "depends on the patient's care [and] [q]uality of . . . his condition."  Schaefer testified that OHR home attendants were told that on a sleep-in shift it was their responsibility to assist a client if the client awoke during the night; if the client had difficulty sleeping, then the home attendant would have to "help the patient at least once or twice a night."  When asked how a sleep-in home attendant was expected to respond if a client required assistance continuously throughout the night, Schaefer testified that home attendants were told to report the problem to the OHR nurse assigned to the client.  The nurse could then request that HRA authorize OHR to provide split shift care to the client.  Shaefer testified, however, that unless and until such an increase was authorized,

the home attendant would have to "try [their] best.  That's all we can tell them."

Kohn believes that home attendants on sleep-in shifts generally receive at least five hours of continuous sleep.  OHR does not track whether home attendants receive five hours of continuous sleep.  Rather, it relies upon its home attendants to report clients' increased restlessness and need for assistance during nighttime hours.  According to Kohn, "[a] home attendant can call the office at any time and speak to the personnel specialist or the nurse.  Or if they're not available, they can ask to speak to a staff member who can guide them to the right personnel."  OHR has a 24-hour call line for home attendants to report problems and ask questions.

Both of the named plaintiffs regularly worked sleep-in shifts in addition to regular hourly shifts.  Severin worked as a home attendant for OHR from January 2005 through March 2005, and then from July 2005 through December 2010.  Cotova was employed as an OHR home attendant from November 2004 through November 2007.  Severin testified that over the course of her employment as an OHR home attendant, she frequently worked multiple sleep-in shifts over the course of a week, sometimes for multiple clients and sometimes for a single client.  Severin stated that she had worked with more than a hundred clients while an OHR home attendant.  She testified that on a sleep-in

shift, "it's practically not possible to sleep," and that OHR
gave her "clients who woke up very many times."  Severin
testified that a specific client had to be turned over in her
sleep every two hours to prevent bed sores.  According to
Severin, she informed an OHR nurse, who "said that we did the
right thing, that we were turning her every two hours and that
we are good workers."  Cotova also testified that when working
sleep-in shifts her clients frequently required her assistance
during the night.

OHR employs approximately 1700 home attendants to provide
service for approximately 1200 clients.  As of April 2008, OHR
home attendants on regular hourly or split shifts are paid
$10/hour for weekdays and $11.25/hour for weekends.  Home
attendants working sleep-in shifts are paid the equivalent of
twelve hours at the regular hourly rate plus a single "per diem"
payment of $16.95, or $136.95 for a weekday sleep-in shift and
$157.95 for a weekend sleep-in shift.

PROCEDURAL HISTORY

On December 30, 2010, Severin filed this action.  On March
3, 2011, a first amended complaint was filed, which included
Cotova's claims.  A second amended complaint was filed on May 27
against defendants OHR, the Metropolitan Council on Jewish
Poverty ("Met Council"), and Kohn.  The defendants moved to

dismiss the second amended complaint on June 17.  The June 17

motion was denied on September 2, except as to Met Council,

which was dismissed from the lawsuit.

On November 4, the plaintiffs moved for partial summary

judgment and authorization of FLSA collective action notice.

The plaintiffs' November 4 motions for partial summary judgment

and collective action notice were denied on the record at a

December 16 conference.  As to the plaintiffs' motion for

collective action notice, the Court stated:

> I think it is premature to issue a collective
> action notice, and I am not sure that one will ever be
> appropriate in this case.  Under the FLSA, the
> companionship exemption will be a complete bar to
> liability.  The kinds of jobs that the companions hold
> are individualized.  They each have separate patients
> or clients; they have to tailor their duties -- indeed
> their hours -- everything to the needs of the
> individual client; they are working under general
> protocols and training and supervision that would, if
> anything, enforce the exemption and not permit a
> violation of the FLSA.
> So the plaintiff would have to establish on an
> individual plaintiff-by-plaintiff basis that somehow
> they performed general household work more than 20
> percent of the time, and of course any work, household
> work, that is related to the fellowship, care or
> protection of their client wouldn't negate the
> exemption.  So there are so many fact-specific
> inquiries -- what kind of household work was
> performed; was it related to the fellowship, care and
> protection of the client; if it was not so directly
> related such that it could be considered general
> household work, did it constitute more than 20 percent
> of the time that the individual spent in that client's
> home or environment.
> So these are very fact-specific inquiries that
> aren't really susceptible, I think, to a similarly-

situated person analysis that would support the
issuance of a collective action notice.

On December 8, the defendants moved for summary judgment on
Kohn's individual liability.  The plaintiffs consented to the
dismissal of their claims against Kohn.


DISCUSSION

On March 30, 2012, the plaintiffs moved for class
certification of their NYLL claims pursuant to Rules 23(a) and
23(b)(3), Fed. R. Civ. P.  They seek to certify a class
"consisting of [OHR] home attendant employees who have been
employed by [OHR] at any time from December 30, 2004 through the
date [OHR] ceases its unlawful acts, who work 24-hour shifts
and/or who work more than 40 hours per week."  The motion became
fully submitted on May 4.


I.  Requirements for Class Certification

"[A] district judge may not certify a class without making
a ruling that each Rule 23 requirement is met."  In re Initial
Pub. Offering Sec. Litig. ("In re IPO"), 471 F.3d 24, 27 (2d
Cir. 2006).  Thus, the plaintiffs will be able to sue as
representatives of a class

only if (1) the class is so numerous that joinder of
all members is impracticable, (2) there are questions
of law or fact common to the class, (3) the claims or
defenses of the representative parties are typical of

the claims or defenses of the class, and (4) the
representative parties will fairly and adequately
protect the interests of the class.

Rule 23(a), Fed. R. Civ. P.; see Brown v. Kelly, 609 F.3d 467,
475 (2d Cir. 2010).

What matters to class certification is not the raising
of common 'questions' -- even in droves -- but, rather
the capacity of a classwide proceeding to generate
common answers apt to drive the resolution of the
litigation.  Dissimilarities within the proposed class
are what have the potential to impede the generation
of common answers.

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)

(citation omitted).  If the Rule 23(a) criteria are satisfied,

an action may be maintained as a class action only if it also

qualifies under at least one of the categories provided in Rule

23(b).  Rule 23(b), Fed. R. Civ. P.; Brown, 609 F.3d at 476.

In this case, plaintiffs seek to certify a class under Rule

23(b)(3).  Rule 23(b)(3) permits certification "if the questions

of law or fact common to class members predominate over any

questions affecting only individual members, and . . . a class

litigation is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Rule 23(b)(3), Fed.

R. Civ. P.; Brown, 609 F.3d at 476.

"In evaluating a motion for class certification, the

district court is required to make a 'definitive assessment of

Rule 23 requirements, notwithstanding their overlap with merits

issues,' and must resolve material factual disputes relevant to

each Rule 23 requirement." Brown, 609 F.3d at 476 (quoting In
re IPO, 471 F.3d at 41). "The Rule 23 requirements must be
established by at least a preponderance of the evidence."
Brown, 609 F.3d at 476 (citation omitted).  In other words, the
district judge must "receive enough evidence, by affidavits,
documents, or testimony, to be satisfied that each Rule 23
requirement has been met."  Teamsters Local 445 Freight Div.
Pension Fund v. Bombardier, Inc., 546 F.3d 196, 204 (2d Cir.
2008) (citation omitted).  The burden of proving compliance with
all of the requirements of Rule 23 rests with the party moving
for certification.  In re IPO, 471 F.3d at 40.

     The parties principally dispute whether the plaintiffs have
satisfied the commonality and typicality requirements.  OHR
argues that the appropriate legal standards governing the
plaintiffs' overtime and minimum wage claims under the NYLL
necessitate individualized, fact-specific inquiries into the
conditions of each home attendant's employment.  Therefore, OHR
argues, individual questions overwhelm any questions of law and
fact common to the putative class, and the plaintiffs cannot
show that the claims of Severin and Cotova are typical of other
OHR home attendants.  These arguments are addressed to the Rule
23(a) criteria, but arise again in OHR's arguments that the
plaintiffs have not shown that any common issues will
predominate over those requiring individualized proof or that

there is a group-wide injury to be addressed here.  Because,
under the appropriate legal standard for evaluating the
plaintiffs' NYLL claims, the motion for class certification
clearly fails the criteria set forth in Rule 23(b)(3), it is
unnecessary to address disputes over the Rule 23(a) criteria.


II.  Rule 23(b)(3) Predominance

     "As a general matter, the Rule 23(b)(3) predominance
inquiry tests whether proposed classes are sufficiently cohesive
to warrant adjudication by representation." Brown, 609 F.3d at
476 (citation omitted).  The predominance requirement's "purpose
is to ensure that the class will be certified only when it would
achieve economies of time, effort, and expense, and promote
uniformity of decision as to persons similarly situated, without
sacrificing procedural fairness or bringing about other
undesirable results." Myers v. Hertz Corp., 624 F.3d 537, 547
(2d Cir. 2010) (citation omitted).  The predominance requirement
is met only "if the plaintiff can establish that the issues in
the class action that are subject to generalized proof, and thus
applicable to the class as a whole, predominate over those
issues that are subject only to individualized proof." Brown,
609 F.3d at 483 (citation omitted).  The requirement that the
court conduct a "rigorous analysis" to ensure "actual, not
presumed conformance" with the Rule 23 requirements applies with

"equal force to . . . those set forth in Rule 23(b)(3)."  In re
IPO, 471 F.3d at 33 n.3.


A.  Plaintiffs' NYLL Overtime Claims

Both the FLSA and the NYLL exempt from their coverage
certain employees providing companionship services, but the
"companionship services" exemptions in these statutes are not
coterminous.  The FLSA exempts "any employee employed in
domestic service employment to provide companionship services
for individuals who (because of age or infirmity) are unable to
care for themselves[.]"  29 U.S.C. § 213(a)(15).  "Companionship
services" is defined by regulation to mean

> those services which provide fellowship, care, and
> protection for a person who, because of advanced age
> or physical or mental infirmity, cannot care for his
> or her own needs.  Such services may include household
> work related to the care of the aged or infirm person
> such as meal preparation, bed making, washing of
> clothes, and other similar services.  They may also
> include the performance of general household work:
> Provided, however, That such work is incidental, i.e.,
> does not exceed 20 percent of the total weekly hours
> worked.

29 C.F.R. § 552.6 (emphasis added).[1]  That an employee is
"employed by an employer or agency other than the family or

---

[1] A 1995 Opinion Letter authored by the United States Department
of Labor ("USDOL") interpreted the regulation's reference to
"general household work", finding that

> such activities as cleaning the patient's bedroom,
> bathroom or kitchen, picking up groceries, medicine,

household using their services" does not alter an employee's exempt status under the FLSA, provided the employee performs "companionship services" as defined by regulation.  29 C.F.R. § 552.109(a); see also Long Island Care At Home, Ltd. v. Coke, 551 U.S. 158, 162 (2007) (holding regulation "valid and binding").

The NYLL's companionship exemption applies to employees who "live[] in the home of an employer for the purpose of serving as a companion to a sick, convalescing or elderly person, and whose principal duties do not include housekeeping."  12 N.Y.C.R.R. § 142-2.14.  Unlike the FLSA, "sleep-in home attendants employed by . . . vendor agencies" are not exempt from the NYLL's coverage.  Settlement Home Care, Inc. v. Indus. Bd. of Appeals of the Dep't of Labor, 151 A.D.2d 580, 581 (2d Dep't 1989). OHR's home attendants are therefore not exempt from the NYLL's

---

and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purpose of section 13(a)(15) of the FLSA.  However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation.

United States Department of Labor, Opinion Letter:  Fair Labor Standards Act, 1995 WL 1032475 (DOL Wage-Hour March 16, 1995).

overtime and minimum wage provisions, a point OHR does not
dispute.

The plaintiffs seek to certify a class of home attendants
who worked more than 40 hours per week and whom OHR did not
properly compensate for overtime.  "There are no provisions
governing overtime compensation in" the NYLL.  Ballard v.
Community Home Care Referral Service, 264 A.D.2d 747, 747 (2d
Dep't 1999).  Overtime requirements under the NYLL are governed
by regulations promulgated by the New York Department of Labor
("DOL"), see 12 N.Y.C.R.R. §§ 142-2.2, 3.2.[2]  These regulations
establish two different formulae for calculating overtime pay
depending on whether the employee is or is not subject to an
exemption under the FLSA.  12 N.Y.C.R.R. § 142-3.2 provides:

> An employer shall pay an employee for overtime at a
> minimum wage rate of one and one-half times the
> employee's regular rate in the manner and methods
> provided in and subject to the exemption of sections 7
> and 13 of [the FLSA] . . . .  In addition, an employer
> shall pay employees subject to the exemptions of
> section 13 of the [FLSA] . . . overtime at a wage rate

---

[2] 12 N.Y.C.R.R § 142-2.1 et seq. applies to employers other than
nonprofit employers that have not exempted themselves from New
York's minimum wage regulations; 12 N.Y.C.R.R. § 142-3.1 et seq.
applies to such nonprofit employers.  OHR is in the latter
category and governed by the latter set of regulations, a point
neither side disputes.  The language of the two sets of
regulations is wholly identical for purposes of this motion,
again a point undisputed by the parties.  This Opinion will
therefore cite to certain cases interpreting relevant provisions
of 12 N.Y.C.R.R. § 142-2.1 et seq. for assistance interpreting
mirror image provisions of 12 N.Y.C.R.R. § 142-3.1 et seq.

of one and one-half times <u>the basic minimum hourly</u> <u>rate</u>.

12 N.Y.C.R.R. § 142-3.2 (emphasis added).[3]  Thus, the NYLL incorporates by reference the FLSA exemptions to determine an employee's proper rate of overtime pay under the NYLL.  <u>See</u> Counsel Opinion Letter, N.Y. Dep't of Labor, RO-07-0069 Overtime -- Companions (July 11, 2007), available at http://labor.ny.gov/legal/counsel-opinion-letters.shtm ("12 NYCRR § 142-2.2 states . . . that all employers shall pay overtime at a rate of one and one-half times the employee's regular rate of pay, <u>unless the employment is covered by one of</u> <u>the FLSA exemptions</u>, in which case the employer shall pay overtime at the rate of one and one-half times the minimum wage." (emphasis added)).

Consequently, home attendants who fall within the FLSA's companionship services exemption are entitled by New York law to "overtime at a wage rate of one and one-half times the basic minimum hourly rate."  12 N.Y.C.R.R. § 142-3.2.  If, however, the home attendant is not subject to the FLSA's companionship exemption, then he or she is entitled under New York law to overtime pay at time-and-a-half of his or her regular hourly rate.  Thus, to determine the minimum amount of overtime pay, it

---

[3] For "non-residential employees" like OHR's home attendants, New York's overtime regulation applies to hours worked in excess of 40 per week.  <u>Id.</u>

is necessary first to determine whether a home attendant is subject to the FLSA's companionship services exemption.

The Court has already determined in the context of the plaintiffs' motion for FLSA collective action notice that the question of whether an individual OHR home attendant is subject to the FLSA companionship services exemption is not susceptible to generalized, classwide proof.  Rather, the applicability of the exemption to a particular home attendant is an individualized, fact-specific determination of whether, as the Court stated on December 16, the home attendant performed general household work "more than 20 percent of the time, and of course any work, household work, that is related to the fellowship, care or protection of their client wouldn't negate the exemption."

The plaintiff likewise has failed to satisfy "the much higher threshold" of Rule 23(b)(3)'s predominance requirement.  See Myers, 624 F.3d at 556.  In the context of this putative class action, the proper rate of overtime for each home attendant under the NYLL would need to be calculated with reference to the FLSA companionship services exemption.  It would be in the interest of each individual class member to demonstrate that the exemption does not apply to him or her, and thus establish an entitlement to the higher rate of overtime pay set forth in 12 N.Y.C.R.R. § 142-3.2.  The plaintiff would

obviously prefer a finding that she is not exempt under the FLSA and is entitled to overtime calculated from her regular hourly rate rather than the minimum wage.  The predominance of these individualized, fact-specific questions renders the plaintiffs' overtime claims ill-suited for classwide resolution.

The plaintiffs argue that whether putative class members "are exempt under the FLSA is irrelevant, since their FLSA claims, if any, would be unaffected by the proposed class action", and the class claims are limited to proper overtime pay under the NYLL.  But New York's overtime pay regulations do not operate independently from their federal counterparts, as the plaintiffs would have it.  Whether a home attendant is or is not subject to the FLSA's companionship services exemption drives the calculation of the rate of overtime pay that a home attendant earns.


B.  Plaintiffs' NYLL Minimum Wage Claims

The plaintiffs also seek to certify a class of all OHR home attendants who have worked 24-hour "sleep-in" shifts during the limitations period.  The plaintiffs allege that OHR's policy and practice in paying these employees for 12 hours at their regular hourly rate plus a flat "per diem" for the remaining 12 hours of the shift violates New York's minimum wage law.

1. Does the Minimum Hourly Wage Apply to all 24 Hours of a Sleep-In Shift?

The NYLL requires employers to pay their employees the minimum wage "for each hour worked". NYLL § 652(1). The current minimum wage rate, effective July 24, 2009, is $7.25 per hour. 12 N.Y.C.R.R. § 142-3.1(a)(5). New York law further provides:

> The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer . . . . However, a residential employee -- one who lives on the premises of the employer -- shall not be deemed to be permitted to work or required to be available for work:
> (1) during his or her normal sleeping hours solely because such employee is required to be on call during such hours; or
> (2) at any other time when he or she is free to leave the place of employment.

12 N.Y.C.R.R. § 142-3.1(b).

A March 11, 2010 DOL Opinion Letter (the "DOL Opinion Letter") interprets New York's minimum wage regulation as it pertains to "live-in companions".[4]   The DOL Opinion Letter states:

> [I]t is the opinion and policy of this Department that live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours of sleep and actually receive five hours of uninterrupted

---

[4] While the plaintiffs refer to OHR home attendants' 24-hour shifts as "sleep-in" shifts in their moving papers, they use the terms "sleep-in" and "live-in" interchangeably to describe the shifts in their complaint.

sleep, and that they are afforded three hours for
meals.  If an aide does not receive five hours of
uninterrupted sleep, the eight-hour sleep exclusion is
not applicable and the employee must be paid for all
eight hours.  Similarly, if the aide is not actually
afforded three work-free hours for meals, the three-
hour meal period exclusion is not applicable.

Counsel Opinion Letter, N.Y. Dep't of Labor, RO-09-00169 Live-In

Companions (March 11, 2010), available at

http://labor.ny.gov/legal/counsel-opinion-letters.shtm

(interpreting 12 N.Y.C.R.R. § 142-2.1).[5]

      "The [DOL's] interpretation of a statute it is charged with

enforcing is entitled to deference.  The construction given

statutes and regulations by the agency responsible for their

administration, if not irrational or unreasonable, should be

upheld."  Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79 (N.Y.

2008) (citation omitted).  An agency's interpretation of a

regulation is not entitled to deference, however, if it

"conflicts with the plain meaning of the promulgated language."

Visiting Nurse Service Of New York Home Care v. New York Stated

Dep't of Health, 5 N.Y.3d 499, 506 (N.Y. 2005).

      The DOL's interpretation of the NYLL's minimum wage

regulation is entitled to deference and will be upheld and

applied.  The regulation obligates employers to pay non-exempt

---

[5] 12 N.Y.C.R.R. § 142-2.1 is identical in all material respects
to 12 N.Y.C.R.R. § 142-3.1, but applies to employers that are
not nonprofit organizations.  The plaintiffs do not challenge
the validity of the DOL Opinion Letter as it applies to OHR on
this basis.

employees the minimum wage "for the time [employees are] permitted to work, or [are] required to be available for work at a place prescribed by the employer[.]" 12 N.Y.C.R.R. § 142-3.1 (emphasis added). The DOL Opinion Letter, in turn, interprets what it means to be "available for work at a place prescribed by the employer" in the context of home health aides working 24-hour shifts in the home of a client. According to the DOL, a "live-in" home health aide is only "available for work at a place prescribed by the employer" for thirteen hours of the day, provided the aide is afforded at least eight hours for sleep and actually receives five hours of continuous sleep.

The DOL's interpretation does not conflict with the plain meaning of the regulatory language. The phrase "available for work at a place prescribed by the employer" fairly means more than merely being physically present at the place prescribed by the employer. Otherwise, the words "available for work" would be surplusage. The phrase as a whole goes beyond simple physical location to imply as well a present ability to work, should the employee be called upon to do so. The DOL's construction of the regulation, finding that a live-in employee who is afforded at least eight hours of sleep time and actually attains five hours of continuous sleep lacks any such present ability to perform work during those hours, does not conflict with the regulatory language.

The DOL's interpretation is likewise not unreasonable or irrational.  "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices . . . courts regularly defer to the governmental agency charged with the responsibility for administration of the statute."  Kurcsics v. Merchants Mutual Insur. Co., 49 N.Y.2d 451, 459 (N.Y. 1980).  Applying a general minimum wage regulation to the specific and unusual employment context of home health aides working 24-hour live-in shifts is precisely such an interpretive task.[6]

The plaintiffs assert that the DOL Opinion Letter should not be allowed to supply the legal standard for determining whether OHR's policies and practices in paying home attendants working sleep-in shifts violated the NYLL's minimum wage provisions.[7]  First, the plaintiffs argue that the DOL Opinion

---

[6] It also bears noting that the DOL Opinion Letter's interpretation of New York's minimum wage regulation in the context of employees working 24 hour shifts appears to draw upon a federal regulation.  See 29 C.F.R. § 785.22 (eight hour sleeping period during 24-hour shift may be excluded, and interruptions of sleep do not vitiate exclusion unless employee cannot attain five actual hours of sleep).  It is not irrational or unreasonable for the DOL to conform the New York regulations with federal regulations and minimize New York employers' administrative burden in complying with two regimes.

[7] Indeed, the plaintiffs' NYLL minimum wage claim appears to hinge on the Court not giving effect to the DOL Opinion Letter.  See Plaintiffs' Second Amended Complaint at ¶ 35 ("At all relevant times, Defendants had a practice and policy of paying their employees a flat rate for a full 12-hour night shift,

Letter does not apply to OHR home attendants, because the term

"live-in employee" is not defined.  But the DOL Opinion Letter

interprets the NYLL's minimum wage regulation in the context of

home health aides working 24-hour shifts, and specifically

states that its interpretation applies regardless of whether the

home health aide is a "residential employee" as defined in the

regulation.[8]  The plaintiffs have failed to identify any

convincing basis to find that the DOL Opinion Letter's

interpretation does not apply to OHR home attendants working

sleep-in shifts.

     The plaintiffs also argue that the DOL Opinion Letter

conflicts with 12 N.Y.C.R.R. § 142-3.1's plain meaning.  The

plaintiffs do not, however, explain in what way the letter and

regulation are in conflict.  The regulation does not provide

---

resulting in an hourly rate well below the minimum wage, in
violation of the . . . [NYLL].").

[8] While the DOL Opinion Letter does not explicitly reference it,
a regulation promulgated by the New York State Department of
Health defines "Live-in 24 hour personal care services" as "the
provision of care by one person for a patient who, because of
the patient's medical condition and disabilities, requires some
or total assistance with one or more personal care functions
during the day and night and whose need for assistance during
the night is infrequent or can be predicted."  18 N.Y.C.R.R.
§ 505.14(a)(5).  The definition of "live-in" care provided in
this regulation is consistent with the type of care provided by
OHR home attendants working sleep-in shifts, and undermines the
plaintiffs' contention that it is ambiguous whether or not the
DOL Opinion Letter applies to them and the putative minimum wage
class.

clear guidance on the meaning of the phrase "available for work". The DOL Opinion Letter provides a reasonable interpretation of the phrase that does not contradict the plain meaning of the regulation's language.

While the defendants refer to Visiting Nurse Service to support this argument, that decision is inapposite. The court addressed a different regulation and rejected the interpretation pressed by a different agency in its brief on appeal. 5 N.Y.3d at 506.[9] Consequently, the decision has little to say about the weight to be given the DOL Opinion Letter when interpreting the phrase "available for work". 12 N.Y.C.R.R. § 142-3.1.[10]

---

[9] In a related context, the Supreme Court has refused to defer to the USDOL's interpretation, advanced for the first time in appellate briefs, of its own regulations passed pursuant to the FLSA. Christopher v. SmithKline Beecham Corp., 567 U.S. ---, --- S.Ct. ---, 2012 WL 2196779, at *8 (June 18, 2012). The Court noted that deference is not due when "there is reason to suspect that an agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question," for example, "when it appears that the interpretation is nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." Id. (citation omitted). As in Christopher, the agency interpretation in Visiting Nurse Service was apparently advanced for the first time in litigation involving the meaning of the disputed regulation. By contrast, the DOL Opinion Letter in this case does not raise the type of concerns about agency deference identified by the Court in Christopher.

[10] In a May 17 letter, after their class certification motion became fully submitted, the plaintiffs reference a recent, unpublished New York State Supreme Court decision touching briefly upon the DOL Opinion Letter. See Kodirov v. Community Home Care Referral Serv., Inc., 35 Misc.3d 1221(A), 2012 WL

2.  Have the Plaintiffs Satisfied Rule 23(b)(3)?

To satisfy Rule 23(b)(3)'s predominance requirement, the
plaintiffs "must at this stage show that more 'substantial'
aspects of this litigation will be susceptible to generalized
proof for all class members than any individualized issues."
Myers, 624 F.3d at 551.  The plaintiffs have failed to make this
showing in connection with their minimum wage claims.

The plaintiffs' NYLL minimum wage claims are premised upon
a flawed reading of the NYLL's minimum wage provisions, one that
does not consider the interpretive guidance in the DOL Opinion
Letter.  The plaintiffs have proceeded upon a theory that OHR's
policy of paying home attendants 12 hours at their regular rate
of pay plus a flat per diem violates the NYLL, because home

---

1605258 (N.Y. Sup. Ct. May 8, 2012).  The plaintiffs in Kodirov
are home attendants employed by a different agency defendant,
id. at *1, and their NYLL claims are similar, but not identical,
to those at issue here.  Id. at *1-*2.  Prior to the plaintiffs
moving for class certification of their NYLL claims, the
defendant moved to dismiss the plaintiffs' classwide claims, and
the plaintiffs moved to compel classwide discovery.  The court
denied the defendants' motion and granted the plaintiffs limited
classwide discovery, id. at *4, repeatedly characterizing the
defendants' arguments that the plaintiffs had not satisfied the
criteria for class certification as premature.  Id. at *2, *3.
The defendants appear to have raised the DOL Opinion Letter,
which the court characterized as "ambiguous" and "not
conclusively establish[ing] that there is no merit to
Plaintiffs' claims."  Id. at *1.  The court does not otherwise
appear to have given the DOL Opinion Letter sustained analysis.
In light of the brevity of the Kodirov court's discussion of the
DOL Opinion Letter and the different procedural posture it
faced, the Court is not inclined to give the Kodirov court's
limited comments about the DOL Opinion Letter persuasive weight.

attendants are entitled to be paid at least the minimum wage for each of the shift's 24 hours.  With respect to their class allegations, the plaintiffs allege that every OHR home attendant who worked sleep-in shifts was underpaid in the same manner. The plaintiffs do not argue that OHR's compensation policy for sleep-in home attendants violates the NYLL's minimum wage provision if the regulation is read in light of the DOL Opinion Letter and its exclusion of hours was properly applied.

Because the DOL Opinion Letter does govern interpretation of the NYLL's minimum wage provisions, the plaintiffs must show that OHR improperly excluded time from 24-hour sleep-in shifts to establish an NYLL minimum wage violation.  OHR asserts that it complied with its obligations under the NYLL's minimum wage provisions through a policy that sleep-in home attendants were entitled to at least eight hours of sleep time and at least five hours of continuous sleep during a 24-hour shift.  OHR has presented evidence that this was OHR's policy, that the policy was communicated to newly-hired home attendants at orientation and to all home attendants at twice-yearly training sessions, and that OHR's home attendants were also told to report immediately to OHR any changes in client condition that prevented sleep-in home attendants from receiving at least eight hours of sleep time and five hours of continuous sleep.  The plaintiffs have not presented evidence from Severin, Cotova, or

any other OHR home attendant that OHR did not inform them that they were entitled to receive at least eight hours of sleep time and five hours of continuous sleep.

Individual plaintiffs may still establish an NYLL violation by showing that they did not in fact receive eight hours of sleep time or five hours of continuous sleep while working sleep-in shifts.  But that is a different theory of liability than the one heretofore pursued by the plaintiffs, and they have not demonstrated that it is susceptible to classwide resolution. Whether or not a home attendant actually received eight hours of sleep time and five hours of continuous sleep is an inherently fact-specific inquiry that is likely to hinge heavily on the characteristics of particular clients to whom sleep-in home attendants were assigned.  Severin and Cotova have both testified that on numerous occasions while working sleep-in shifts they were unable to sleep through the night, because they were constantly forced to attend to clients' physical and mental impairments.  Resolving the plaintiffs' minimum wage claims will require, at a minimum, establishing the truth or falsity of a plaintiff's sleep deprivation contentions, the frequency with which the issue arose for a plaintiff, whether the plaintiff reported the problem to OHR, and OHR's response.  Answering these questions is unlikely to "generate common answers apt to drive the resolution of" class litigation, or "resolve . . .

issue[s] that [are] central to the validity of each one of the [class] claims in one stroke." <u>Wal-Mart</u>, 131 S. Ct. at 2551. Because the plaintiffs have failed to show that common questions of law or fact predominate over individual ones as to their NYLL minimum wage claim, class certification of this claim must be denied as well.

The plaintiffs raise several additional arguments that common questions of law and fact render their NYLL minimum wage claims susceptible to classwide resolution.  First, the plaintiffs argue that it was OHR's common policy and practice not to allow sleep-in home attendants to take the three work-free hours for meals during a 24-hour shift as discussed in the DOL Opinion Letter.  As evidence of this violation, plaintiffs point to OHR's Home Attendant Handbook, which states that home attendants working sleep-in shifts do not have "duty free hours".  But the Home Attendant Handbook describes a "duty free hour" as one in which the home attendant may leave the client's home, and the DOL Opinion Letter does not state that it is necessary that a home attendant be allowed to leave the premises for a meal hour to be considered "work-free".  It does not follow from the fact that OHR home attendants on sleep-in shifts are not allowed a "duty-free hour" that it is OHR's policy not to allow them three work-free hours for meals during the 24-hour shift.

More importantly, even if OHR did not permit its employees three work-free hours for meals, that practice would not constitute a violation of the NYLL's minimum wage provisions. The DOL Opinion Letter treats the eight-hour sleep period exclusion and the three-hour meal period exclusion as separate and distinct for purposes of calculating an employee's hours worked in a 24-hour shift.[11]  OHR home attendants are presently paid $136.95 for a weekday sleep-in shift.  Even if the eight-hour sleep period exclusion is the only exclusion applied, and a home attendant is found to have worked 16 compensable hours, OHR compensates home attendants at a rate of approximately $8.55 per hour.  That is greater than New York's current $7.25 per hour minimum wage.

The plaintiffs next argue that the actual amounts of sleep attained by individual home attendants working sleep-in shifts cannot be proven on a classwide basis because OHR has breached its statutory duty "to keep accurate records" of hours worked and wages paid.  See NYLL § 196-a.  In essence, the plaintiffs seek to transform their minimum wage claims.  Rather than alleging that the manner in which OHR compensated all home attendants working sleep-in shifts violated the NYLL's minimum

---

[11] "Similarly, if the aide is not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable."  March 11, 2010 DOL Opinion Letter (emphasis added).

wage provisions, the plaintiffs contend that OHR's record-keeping practices violate the NYLL and the burden should shift to OHR to prove it paid all sleep-in home attendants the minimum wage on a classwide basis.  The plaintiffs have not heretofore challenged the adequacy of OHR's record-keeping.  Indeed, in their initial moving papers the plaintiffs asserted that OHR's detailed personnel records provided substantial common proof for their classwide minimum wage allegations.  It is too late for the plaintiffs to alter their minimum wage allegations and to certify a class on a theory at which their complaint did not hint.

Finally, the plaintiffs argue that common proof is available with respect to the type of clients requiring sleep-in care.  The plaintiffs have not suggested how general criteria applied by HRA to assess a patient's appropriate level of care would supply "common answers" to the critical issue of whether individual sleep-in home attendants received eight hours of sleep time during shifts and actually attained five hours of continuous sleep.

CONCLUSION

The plaintiffs' March 30 motion for class certification of their NYLL claims is denied.

SO ORDERED:

Dated:    New York, New York
          June 20, 2012

_____
             DENISE COTE
        United States District Judge